IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GARFUM.COM CORPORATION,

                    Plaintiff,

          v.

REFLECTIONS BY RUTH D/B/A
BYTEPHOTO.COM,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

 Civil No. 14-5919 (JBS/KMW)


          **OPINION**


APPEARANCES:

Lawrence C. Hersh, Esq.
17 Sylvan Street, Suite 102B
Rutherford, New Jersey 07070
     and
Austin Hansley, Esq. (<u>pro hac vice</u>)
AUSTIN HANSLEY PLLC
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
     Attorneys for Plaintiff

Frank L. Corrado, Esq.
BARRY, CORRADO & GRASSI, PC
2700 Pacific Avenue
Wildwood, New Jersey 08260
     and
Joseph C. Gratz, Esq. (<u>pro hac vice</u>)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, California 94111
     and
Daniel K. Nazer, Esq. (<u>pro hac vice</u>)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, California 94109
     Attorneys for Defendant

**SIMANDLE**, Chief Judge:

This matter comes before the Court upon the Motion of Defendant Reflections by Ruth d/b/a Bytephoto.com ("Defendant") for Attorneys' Fees ("Defendant's Motion" [Docket Item 46].) Defendant seeks a declaration from this Court that this patent case is "exceptional" pursuant to 35 U.S.C. § 285 and requests that this Court grant it attorneys' fees based on the conduct of Plaintiff Garfum.com Corporation ("Plaintiff" or "Garfum") in both bringing suit and the manner in which the suit was litigated. Plaintiff opposes. For the reasons that follow, Defendant's Motion will be **GRANTED IN PART.**

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant Reflections by Ruth is a sole proprietorship run by Ruth Taylor in the business of landscape photography. (Taylor Cert. [Docket Item 46-4] ¶¶ 2-3.)  Ruth Taylor and her husband, Steve Taylor, own and operate Bytephoto.com ("Bytephoto") as a hobby.  (Id. ¶¶ 4-5.)  They acquired Bytephoto from its original owners in 2009.  (Id. ¶ 6.)  The Taylors operate Bytephoto at a loss, generating just over $300 in revenue in 2013, and costing approximately $1,400 to operate. (See id. ¶¶ 5, 9-10.)  Bytephoto is run through Reflections by Ruth and not as an independent entity.  (Id. ¶ 17.)  Bytephoto has hosted photo competitions decided by user vote since at

2

least 2003, when Ruth first won a Bytephoto competition before acquiring the site.  (Id. ¶ 8.)

Plaintiff Garfum.com is also a small, family-owned business that was started in 2007 by Michael Garofalo.  (Garofalo Decl. [Docket Item 52-1] ¶ 2.)  On June 26, 2007, Garofalo filed a provisional patent application that ultimately resulted in U.S. Patent No. 8,209,618 (the "'618 Patent"), which issued on June 26, 2012.  (Id. ¶ 3; Def.'s Mot. Br. [Docket Item 46-6] at 3; Pl.'s Opp. [Docket Item 52] at 2-3.)  The day before the '618 Patent issued, Garofalo filed U.S. Patent Application No. 13/531,615 (the "'615 Application"), a continuation of the '618 Patent.  (Garofalo Decl. ¶ 3.)

On September 23, 2014, Plaintiff filed suit against Defendant, alleging infringement of one or more claims of the '618 Patent.  (Compl. [Docket Item 1] ¶¶ 9-15.)  Plaintiff filed three other similar lawsuits on the same day against three other defendants to enforce the same patent.  (Garofalo Decl. ¶ 3.)  The instant suit was filed without any prior contact by Plaintiff to Defendant.  (Taylor Cert. ¶ 11.)  Defendant attempted to find counsel, and was informed that any intellectual property attorneys in the area would require at least a $10,000 retainer and that defending the suit could cost hundreds of thousands of dollars.  (Id. ¶ 12.)  Defendant hired a law firm from Doylestown, Pennsylvania -- Ryder, Lu, Mazzeo &

Konieczny LLC -- to assist in negotiating with Plaintiff before entering an appearance or filing an answer in this suit.  (See id.¶¶ 12-13.)

Plaintiff initially offered Defendant a license to the '618 Patent for $50,000.  (Hanley Decl. [Docket Item 52-3] ¶ 4.) Defendant then sent Plaintiff a certification from Ruth Taylor stating that Bytephoto had an income of just over $300 in 2013 and a little under $500 in 2014.  (Taylor Cert. ¶ 15 & Ex. A.) Plaintiff then requested Bytephoto's tax returns.  (Id. ¶ 16 & Ex. B.)  Because Bytephoto is operated as part of Reflections by Ruth by the Taylors, Defendant did not have a separate tax return for Bytephoto, and sent tax returns for Reflections by Ruth to Plaintiff.  (Id. ¶ 17 & Ex. C.)  Almost two months later, Plaintiff lowered its demand to $5,000.  (Id. ¶ 18 & Ex. D; Hanley Decl. ¶ 4; Garofalo Decl. ¶ 6.)  After this was rejected, Plaintiff again lowered its demand to $2,500.  (Taylor Cert. ¶ 19; Hanley Decl. ¶ 4.)  During this period of negotiations, Defendant was able to retain pro bono counsel through assistance from the Electronic Frontier Foundation ("EFF").  (Taylor Cert. ¶ 20.)

One week after the $2,500 demand was made, on February 13, 2015, Defendant filed a motion to dismiss under 35 U.S.C. § 101, arguing that the '618 Patent claims unpatentable subject matter. (Hanley Decl. ¶ 5; Def.'s Mot. Br. at 7-8; see also Def.'s Mot

4

to Dismiss ("DMTD") [Docket Item 18].)  Defendant also answered
the complaint, denying the claim for patent infringement, and
counterclaimed for a declaratory judgment of noninfringement and
invalidity and/or unenforceability of the '618 Patent.  (See
generally Answer [Docket Item 19].)  Plaintiff, on the basis
that they would not be able to obtain enough damages to justify
continuing suit, then offered to resolve the case through mutual
dismissals and a covenant not to sue.  (Hanley Decl. ¶ 6; Gratz
Cert. [Docket Item 48-1] Ex. C.)  Defendant would not agree to
this resolution without a stipulation of invalidity of the '618
Patent to resolve its counterclaim.  (Hanley Decl. ¶ 6.)
Plaintiff then offered to pay a portion of Defendant's
attorneys' fees if Defendant would provide a breakdown of fees
and costs, but Defendant declined and said it would not seek
fees at all if Plaintiff would stipulate to invalidity.  (Id.
¶ 7; Gratz Cert. Ex. D.)

On April 6, 2015, Plaintiff filed an opposition to the
motion to dismiss, and on April 13, 2015, Defendant replied.
(Hanley Decl. ¶ 8; see also Pl.'s Opp. to DMTD [Docket Item 38];
Def.'s Reply for DMTD [Docket Item 41].)  On May 19, 2015, the
Court[1] set a hearing on the motion for May 27, 2015.  (See Order,

---

[1] At the time, the case was assigned to Judge Joseph E. Irenas.
Unfortunately, Judge Irenas passed away in October, 2015.  The
case was then reassigned to the undersigned.

May 19, 2015 [Docket Item 42].)  The next day, Plaintiff
executed a covenant not to sue and filed a motion to dismiss the
complaint and the counterclaims.  (Hanley Decl. ¶ 9; see also
Pl.'s Mot. to Dismiss [Docket Item 43]; Covenant Not To Sue
(Patterson Decl. [Docket Item 43-2] Ex. A).)  Plaintiff's
counsel explains that Plaintiff issued this covenant after
"[h]aving essentially run out of options."  (Hanley Decl. ¶ 9.)
Defendant's counsel notes that the covenant was unprompted and
had the effect of Plaintiff "unilaterally dismissing its claims
with prejudice."  (Gratz Cert. ¶ 15.)  On May 21, 2015, the
Court granted Plaintiff's motion to dismiss, dismissed
Defendant's motion to dismiss as moot, and closed the case.
(See Order, May 21, 2015 [Docket Item 45].)

        Following dismissal of the case, Defendant's counsel
contacted Plaintiff requesting Plaintiff pay $10,000 in
attorneys' fees, otherwise Defendant would file a motion seeking
fees.  (Garofalo Decl. ¶ 10.)  Defendant declined to do so, and
on June 22, 2015, Defendant filed the instant motion for
attorneys' fees as well as an accompanying motion for costs.[2]

---

[2] The motion for costs sought only fees for pro hac vice
admissions.  (See Defs.' Mot. for Costs [Docket Item 47].)  The
Clerk denied Defendant's request for costs on the grounds that
pro hac vice admission fees are not properly taxable in a bill
of costs, but did determine that "Defendant is the 'prevailing
party' because . . . it obtained a voluntary dismissal with
prejudice by Plaintiff."  (Clerk's Order, June 25, 2015 [Docket
Item 49] at 3.)

## II.   JURISDICTION

This action for patent infringement arises under the patent laws of the United States.  Accordingly, the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338(a).  Although the covenant not to sue divested this Court of jurisdiction over the declaratory judgment counterclaims, and the Plaintiff's motion to dismiss divested this Court of jurisdiction over the original complaint, the Court retains independent jurisdiction over the request for attorneys' fees.  Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229, 1242 (Fed. Cir. 2008) (citations omitted).

## III. STANDARD

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  The Supreme Court has recently clarified the standard to be applied in these cases, explaining that "an 'exceptional' case is simply one that stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014) (emphasis added).  This disjunctive standard explicitly overruled previous Federal Circuit case law that had

required a finding that the case was both objectively baseless and subjectively brought in bad faith.  See id. at 1754. Further, a party need only prove its entitlement to fees by a preponderance of the evidence.  Id. at 1758.

The Court in Octane Fitness reserved the determination of whether a case is "exceptional" under 35 U.S.C. § 285 to the discretion of the District Court, instructing courts to "consider[ ] the totality of the circumstances."  Id. at 1756. The Court further referred to a nonexclusive list of factors that could aid courts in this determination, "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  Id. at 1756 n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).  The conduct need not be independently sanctionable to render the case "exceptional."  See id. at 1756–57 ("But sanctionable conduct is not the appropriate benchmark.").

The issue of whether to award fees under 35 U.S.C. § 285 is an issue of Federal Circuit law.  Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed. Cir. 2004).  "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court."  Mathis

8

v. Spears, 857 F.2d 749, 755 (Fed. Cir. 1988) (citing Lam, Inc.
v. Johns-Manville Corp., 718 F.2d 1056, 1068 (Fed. Cir. 1983)).

## IV.   DISCUSSION

Defendant moves for attorneys' fees on the grounds that
this case is "exceptional" under 35 U.S.C. § 285 because
Plaintiff's suit was brought in bad faith and Plaintiff's
conduct in litigating this case was unreasonable.  (Def.'s Mot.
Br. at 11-19.)  Plaintiff opposes both of these grounds, and
also argues that Defendant is not the prevailing party.  (Pl.'s
Opp. at 7-12.)  The Court will address prevailing party status
first, and then move on to assess whether the case is
exceptional.  As will be explained below, the Court finds that
Defendant is the prevailing party, the case is exceptional, and
in its discretion will award partial fees to Defendant.

### A.   PREVAILING PARTY STATUS UNDER 35 U.S.C. § 285

Determining whether a party is the "prevailing party" for
the purposes of 35 U.S.C. § 285 is an issue of Federal Circuit
law rather than Third Circuit law.  See Highway Equipment Co.,
Inc. v. FECO, Ltd., 469 F.3d 1027, 1032 (Fed. Cir. 2006).  There
must be a "judicially sanctioned change in the legal
relationship of the parties" for one party to have "prevailing
party" status.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't
of Health & Human Res., 532 U.S. 598, 605 (2001).  The Court in

Buckhannon held that a defendant's voluntary change in conduct that renders the suit moot, even where it accomplishes what the plaintiff sought, "lacks the necessary judicial imprimatur on the change." Id. (emphasis in original). Explicitly applying the holding of Buckhannon to 35 U.S.C. § 285, the Federal Circuit has held that "as a matter of patent law, the dismissal with prejudice, based on the covenant [not to sue] and granted pursuant to the district court's discretion under Rule 41(a)(2), has the necessary judicial imprimatur to constitute a judicially sanctioned change in the legal relationship of the parties." Highway Equipment, 469 F.3d at 1035 (citations omitted).

Plaintiff submits that because it voluntarily granted Defendant a covenant not to sue, there has been no decision in favor of Defendant. (Pl.'s Opp. at 11–12.)  In its brief, Plaintiff cites to a number of district court cases, which are either inapposite or have been subsequently reversed by the Federal Circuit for failing to comport with the analysis of Highway Equipment.  Plaintiff further cites to a Fifth Circuit case which the Federal Circuit expressly considered and distinguished in deciding Highway Equipment.

Under the Federal Rules of Civil Procedure, a plaintiff may only voluntarily dismiss an action without the Court's approval by filing "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A) (emphasis added). If neither of those conditions apply, then dismissal may only come "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Here, Plaintiff provided the covenant not to sue after Defendant had answered, and no stipulation of dismissal signed by all parties was offered. Therefore, dismissal could only be under Rule 41(a)(2). Further, the dismissal was with prejudice as to Plaintiff's claims. Accordingly, Highway Equipment speaks directly to this issue, and Defendant is indeed the prevailing party.[3]

## B.   DETERMINATION OF WHETHER CASE IS EXCEPTIONAL

Defendant asserts that the claims of the '618 Patent are directed towards unpatentable subject matter under 35 U.S.C. § 101 as explained by the Supreme Court in Alice Corp. Pty. Ltd. v. CLS Bank International, 134 S. Ct. 2347 (2014). (Def.'s Mot. Br. at 11-13.) Defendant further argues that Plaintiff's

---

[3] This is also in agreement with the Clerk's Order finding Defendant the prevailing party under Rule 54, as noted above. While this Court has not been asked to review the Clerk's Order, the Court notes that the Federal Circuit "ha[s] likewise held that a defendant was the prevailing party for purposes of costs under Rule 54 where the plaintiff voluntarily dismissed its case against one defendant with prejudice." Highway Equipment, 469 F.3d at 1035 (citing Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396, 1416 (Fed. Cir. 2004)). The Federal Circuit has "treated the prevailing party issue under Rule 54 and 35 U.S.C. § 285 similarly." Id. (citations omitted).

arguments in defending against Defendant's motion to dismiss were meritless and contrary to the text of the patent. (Id. at 13–16.) Plaintiff responds that the patent is valid. (Pl.'s Opp. at 9–11.) Defendant also challenges Plaintiff's litigation conduct. The Federal Circuit has explained that "under Octane Fitness, the district court must consider whether the case was litigated in an unreasonable manner as part of its exceptional case determination, and that district courts can turn to [the Federal Circuit's] pre-Octane Fitness case law for guidance." SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1349 (Fed. Cir. 2015).

The Court must evaluate the "substantive strength of the party's litigating position." Octane Fitness, 134 S. Ct. at 1756. Then, even if a party's position is ultimately meritless, the question is whether it was "so merit-less as to 'stand out' from the norm and, thus, be exceptional." SFA Sys., LLC v. Newegg, Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (quoting Octane Fitness, 134 S. Ct. at 1756)). Here, the parties fully briefed the issue of validity under 35 U.S.C. § 101, but then Plaintiff voluntarily dismissed the case before a decision on the merits issued. Thus, there has been no finding from the Court regarding the validity of the '618 Patent under 35 U.S.C. § 101. The Court will not reach a finding on validity here, but will assess the merits of Plaintiff's argument for validity

under 35 U.S.C. § 101 and also assess Plaintiff's litigation conduct, all in the context of this 35 U.S.C. § 285 motion.

### 1.   MERITS OF PLAINTIFF'S CASE

The basis of Defendant's challenge to the substantive strength of Plaintiff's position is that "[a]ny reasonable attorney would have appreciated that the claims of the '618 [P]atent would not survive a challenge under 35 U.S.C. § 101." (Def.'s Mot. Br. at 13.)  Under the test for patent eligible subject matter as explained by the Supreme Court in Alice, a court assessing validity under 35 U.S.C. § 101 must make two inquiries:  (1) whether the patent claims laws of nature, natural phenomena, or abstract ideas; and (2) if so, whether the claims include an "inventive concept" such that "the additional elements 'transform the nature of the claim' into a patent-eligible application."  134 S. Ct. at 2355 (citing Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1294-97 (2012)).

A court may address the issue of patent eligible subject matter before construing terms, especially where, as here, the patentee does not point to any specific terms or constructions that would alter the analysis.  See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.), 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim

construction is not an inviolable prerequisite to a validity determination under § 101."); CyberFone Sys., LLC v. Cellco P'ship, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (declining to construe claims before a § 101 analysis where "plaintiff did not explain how claim construction might alter such analysis"), aff'd, 558 F. App'x 988 (Fed. Cir. 2014).

### i. Abstract Idea

At step one of the Alice test, the claims of the '618 Patent are directed to an abstract idea, specifically the abstract idea of ranking content by popularity and within a category.  The parties, both in briefing the original motion to dismiss based on 35 U.S.C. § 101 and reaffirmed in briefing on this motion, have only semantic differences in characterizing the claims of the '618 Patent.  Defendant refers to the '618 Patent as "conducting a competition decided by popular vote, albeit one that occurs online."  (Def.'s Mot. Br. at 12.) Plaintiff tries to turn attention away from the steps recited in the claims and towards the grander ambition of "content organization within a database", but the method by which the patent organized content is by popular vote.  (Pl.'s Opp. to

DMTD at 7; see Pl.'s Opp. at 9 (incorporating by reference Plaintiff's Opposition to Defendant's Motion to Dismiss).)[4]

In Alice, the Court did not "delimit the precise contours of the 'abstract ideas' category." 134 S. Ct. at 2357. But the Court has held "fundamental economic practice[s] long prevalent in our system of commerce" are abstract ideas. See id. at 2356 (citing Bilski v. Kappos, 561 U.S. 593, 611 (2010)). Following Alice, courts have also considered "long prevalent" practices outside of the realm of economics to be abstract ideas. See, e.g., BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC, 107 F. Supp. 3d 639, 650 (N.D. Tex. 2015) ("Filtering content, or 'determining who gets to see what,' is an abstract idea because it is a longstanding method of organizing human activity."), appeal argued, No. 15-1763 (Fed. Cir. Mar. 8, 2016); DietGoal Innovations LLC v. Bravo Media LLC, 33 F. Supp. 3d 271, 283–84 (S.D.N.Y. 2014) (finding a patent claiming a

---

[4] Plaintiff further appears to argue that the novelty of the claims should indicate that they are not directed to an abstract idea. (See Pl.'s Opp. at 9 ("The invention of the '618 Patent presents a novel method to improve [database] functionality. Therefore, the '618 Patent is directed to patent eligible subject matter.") However, the novelty issue under 35 U.S.C. § 102 is irrelevant to at least the analysis of an abstract idea under 35 U.S.C. § 101. See Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 714–15 (Fed Cir. 2014) ("We do not agree with [plaintiff] that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete. In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the Alice analysis.").

method of meal planning directed toward an abstract idea),
aff'd, 599 F. App'x 956 (Fed. Cir. 2015) (per curiam).  Further,
even if the claims do not explicitly claim an abstract idea,
where the "ordered combination of steps recites an abstraction,"
then the court must find that the patent is directed to an
abstract idea.  See Ultramercial, 772 at 714–15.

Here, without purporting to construe the claims of the
patent, the steps of independent claim 1 include:  (1) creating
one user account for each user where each account can upload
content; (2) creating a network of users; (3) categorizing
uploaded content; (4) organizing content in a competitive
format; (5) letting each user vote on the content; and (6)
ranking the content based on votes.  '618 Patent col. 19 ll. 8–
33.  The other independent claim is mostly the same, but
includes the additional step of having multiple rounds.  '618
Patent col. 19 l. 47–col. 20 l. 25.  The respective dependent
claims do not significantly modify these basic steps.  See '618
Patent col. 19 ll. 34–46, col. 20 ll. 26–45.  This ordered
combination recites an abstraction -- ranking content by
popularity and within a category.

### ii.  Inventive Concept

The second step of the Alice analysis requires determining
whether there is an "inventive concept" present, i.e.,

"additional elements [that] 'transform the nature of the claim' into a patent-eligible application." 134 S. Ct. at 2355 (quoting Mayo, 132 S. Ct. at 1297). As will be explained, the claims of the '618 Patent do not appear to contain this inventive concept. Defendant argues that "[t]he claims merely ask for generic computer functionality" and also that the "specification repeatedly and explicitly states that the claimed method is to be performed using generic computer and network technology." (Def.'s Mot. Br. at 12–13 (emphasis removed).) Plaintiff counters that the patent "discloses a specific method for solving a specific problem with computer networks, i.e., the problem of sharing multimedia files among a plurality of users of a computer network." (Pl.'s Opp. at 9.)

Plaintiff's argument seems to rely on the Federal Circuit's holding in DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245 (Fed. Cir. 2014). In DDR Holdings, the court found claims patent eligible where the patent presented a solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257. The patent-in-suit in DDR Holdings described a system of generating a composite web page when a user clicked on a third-party merchant's advertisement that combined the visual elements of the "host" website with the content of the third-party merchant. Id. at 1248. The court

17

explained that "these claims stand apart because they do not
merely recite the performance of some business practice known
from the pre-Internet world along with the requirement to
perform it on the Internet." Id. at 1257. However, the court
explicitly cautioned that "not all claims purporting to address
Internet-centric challenges are eligible for patent." Id. at
1258.

"In determining whether technology created the relevant
problem, courts look to whether the claims at issue override
some conventional sequence of events taking place within a
particular technological environment." Source Search Techs.,
LLC v. Kayak Software Corp., 111 F. Supp. 3d 603, 611 (D.N.J.
2015) (citing Messaging Gateway Sols., LLC v. Amdocs, Inc., No.
14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015)).
"Merely improving speed and efficiency through implementation
over the internet or computers does not root problem and
solution in computer technology. Courts look to whether a human
being could perform the same steps, albeit at a slower pace."
Id. at 612 (citations omitted).

The claims of the '618 Patent are more like the type of
claims rejected in Alice that "merely require[d] generic
computer implementation [and] fail[ed] to transform that
abstract idea into a patent-eligible invention." 134 S. Ct. at
2357; see also Ultramercial, 772 F.3d at 716 ("Given the

18

prevalence of the Internet, implementation of an abstract idea on the Internet in this case is not sufficient to provide any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" (modification in quote) (quoting Mayo, 132 S. Ct. at 1297)). "[T]ransformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words "apply it."'"  Alice, 134 S. Ct. at 2359 (quoting Mayo, 132 S. Ct. at 1294).

Looking at the claims, these are exactly of the type distinguished by the court in DDR Holdings.  The claims "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet."  See DDR Holdings, 773 F.3d at 1257.  The practice of ranking things in categories based on popular vote was well known before the advent of the internet, or even computers, and the requirement to involve an online database does not make the claim inventive.  Further, any person with pen or paper could perform the same steps of the method claimed in the patent -- tallying votes and organizing content based on those tallied votes.  It is of no moment that the votes may be numerous or the amount of content to organize voluminous; the patent itself claims "a plurality" meaning only more than one. See, e.g., '618 Patent at col. 19 l. 11-12 ("creating a

19

plurality of user accounts, each of the user accounts corresponding to the one of the plurality of users . . . .") . Thus, the claim limitations would be met by only two users voting.

Plaintiff also argues that the claims "ha[ve] additional features and meaningful, non-conventional, non-generic limitations, including specific features that address issues with database organization." (Pl.'s Opp. to DMTD at 11-13 (citing Barnett Decl. [Docket Item 38-2]).) Plaintiff further argues that the '618 Patent was an improvement over the prior art because "a conventional database could not deliver to a user the 'funniest video' or the 'best photograph.'" (Id. at 7 (citing Barnett Decl. ¶¶ 10, 16, 18-19).) In support of this, Plaintiff's expert submits that "the claim term 'establishing a hierarchy for the uploaded multi-media content' requires more than conventional methods, but rather, a specific database design." (Barnett Decl. ¶ 20 (emphasis added).)

However, as the specification of the patent makes clear in explaining the block diagram of Figure 1 that encompasses the claimed invention:

> Databases **194**, **197** store software, descriptive data, digital content, system data, and any other data item required by the other components of server apparatus **167**. Databases used as databases **194**, **197** are provided as, for example, a database management system ("DBMS"), an object-oriented database management system ("ODBMS"), a relational database management system (e.g., DB2,

20

> ACCESS, etc.), a file system, <u>and/or another</u>
> <u>conventional database package</u>. In alternative
> examples, each of database **194**, **197** are implemented using object-
> oriented technology or via text files that are accessed
> with a Structured Query Language (SQL) or other tools
> known to those having ordinary skill in the art.

'618 Patent col. 10 ll. 11-22 (emphasis added). This is in
direct opposition to the claims of Plaintiff and its expert that
a conventional database could not implement the claims of the
'618 Patent.

Even if the claims were limited to database technology, the
Court has made clear that "limiting the use of an abstract idea
'to a particular technological environment'" does not make the
claim patent eligible. <u>Alice</u>, 134 S. Ct. at 2359 (quoting
<u>Bilski</u>, 561 U.S. at 610-11). This is still just taking the
abstract idea and saying "apply it." That the claims do not
appear to have an inventive concept should have been obvious to
the Plaintiff in the post-<u>Alice</u> environment.

## 2. REASONABLENESS OF PLAINTIFF'S CONDUCT IN LITIGATION

Defendant contends that Plaintiff's conduct here was
"classic nuisance litigation." (Def.'s Mot. Br. at 16.)
Plaintiff responds that its conduct was reasonable and it was
indeed Defendant's behavior that was improper. (Pl.'s Opp. at
7-8.) The Court is unpersuaded by most of Plaintiff's arguments
in opposition, and agrees in part with Defendant that this case

was not litigated in a manner showing confidence in a strong litigation position.

Plaintiff's initial settlement demand of $50,000 was high, but not unreasonably so if it believed that it could obtain at least that much in damages at trial.  Even once Defendant had tendered a sworn statement from Ruth Taylor that Bytephoto operated at a loss of approximately $1,000 annually and Plaintiff had received Defendant's tax returns, the continued high demands were still not unreasonable, as they were starting positions for negotiation.  Plaintiff argues that because it dropped the demand by 90% to $5,000, and then a further 50% to $2,500, it acted reasonable.  (Pl.'s Opp. at 7–8.)  While the first percentage drop could be artificially inflated by simply having a large initial demand, the second percentage drop shows continued negotiation in attempting to reach a settlement to protect Plaintiff's intellectual property rights. Plaintiff points to its ability to negotiate settlements in the other three simultaneously filed cases as evidence of its reasonable litigation strategy.  (Pl.'s Opp. at 8.)  That Plaintiff was able to successfully obtain settlements with three other simultaneously sued defendants could weigh in favor of a finding that this was part of Plaintiff's litigation tactics, or it could support a conclusion that Plaintiff's claims had some vitality worth protecting and litigating.

However, the fact that Plaintiff offered a walk away which Defendant rejected after the filing of Defendant's original motion to dismiss does give the Court pause.  Defendant rejected the walk away, apparently on the grounds that Defendant wanted a declaration of invalidity of the patent to settle its counterclaim of invalidity.  But then Plaintiff voluntarily dismissed the entire case and provided a covenant not to sue right after the Court set the motion to dismiss for a hearing.

If Plaintiff had truly wanted a walk away earlier, Plaintiff could have provided the covenant not to sue rather than opposing the motion.  As Plaintiff explained, the walk away was offered once Plaintiff "[r]ealiz[ed] that pursuing the case further did not make any financial sense in light of the low potential damages and that it did not have the financial wherewithal to engage in protracted litigation."  (Pl.'s Opp. at 4; Garofalo Decl. ¶ 7; Hanley Decl. ¶ 6.)  But opposing the motion to dismiss meant that Plaintiff was pursuing the litigation further even though it apparently no longer made financial sense.  The financial situation of Defendant did not change, nor did any other material fact change between the filing of the motion to dismiss and the motion being set for a hearing.

Further, the fact that the covenant not to sue was tendered almost immediately after the Court set the motion hearing makes

23

it appear as though Plaintiff was running away from any decision on the merits.  The Court does not understand Plaintiff's characterization of providing the covenant not to sue as "[h]aving essentially run out of options." (Pl.'s Opp. at 5; Hanley Decl. ¶ 9.)  For Plaintiff to claim that it had no other option but to provide a covenant not to sue to avoid the attendant consequences of bringing a lawsuit is at odds with the fact that Plaintiff is the one who filed suit.  On this ground, Plaintiff's conduct was unreasonable.

### 3.   EXCEPTIONAL NATURE OF THE CASE

Having evaluated the merits of Plaintiff's arguments and litigation conduct, the Court now turns to whether Plaintiff's positions were "exceptional" under 35 U.S.C. § 285.  Fees are awarded "not as a penalty for failure to win a patent infringement suit, but as appropriate only in extraordinary circumstances." Octane Fitness, 134 S. Ct. at 1753 (internal quotation marks and citation omitted).  Defendant points to the fact that Plaintiff's arguments were contrary to the text of the patent, and that Plaintiff submitted a conclusory and irrelevant expert declaration.  (Def.'s Mot. Br. at 13–16.)  Plaintiff does not specifically dispute this, merely continuing to claim that the patent is valid and incorporating all arguments made in its original opposition to the motion to dismiss.  (Pl.'s Opp. at

24

9.)  Plaintiff also points to a June 2015 notice of allowance issued by the U.S. Patent and Trademark Office (the "PTO") in the '615 Application, arguing that the similarity of allowed claims in the '615 Application and the claims of the '618 Patent support validity under 35 U.S.C. § 101.  (Pl.'s Opp. at 9–11.)

Of relevance here is that Plaintiff's suit was filed at the end of 2014 and the issue of invalidity under 35 U.S.C. § 101 was briefed in the spring of 2015.  Before briefing concluded on this issue in April 2015, the parties had the benefit of the Alice decision from the Supreme Court, and many courts had opined on the issue -- both district courts and the Federal Circuit -- after the Supreme Court issued its Alice decision in June 2014.  Thus, although the law on patent eligible subject matter had been in flux, a sufficient number of cases had been decided by the time of briefing that Plaintiff should have realized that its arguments under 35 U.S.C. § 101 were untenable.

The fact that Plaintiff made untenable arguments directly contrary to the plain text of the specification is also troubling.  The court in Lakim Industries, Inc. v. Linzer Products Corp., No. 12-cv-4976-ODW, 2013 WL 1767799 (C.D. Cal. Apr. 24, 2013), aff'd, 552 F. App'x 989 (Fed. Cir. 2014) (per curiam), was faced with a similar issue.  There, during claim construction the patentee argued that the claim term "paint

25

roller" meant something highly specialized.  Id. at *3–4.  The court had rejected this argument, and pointed to the fact that the patent specifically referred to "any commercially available paint roller."  Id. at *5.  Faced with the fact that the patentee proposed a construction "contrary to all the intrinsic evidence," the court found the claim construction position objectively baseless in determining whether to assess fees.  Id. Plaintiff here has done the same thing by arguing for patentability on the grounds that the patent claimed something specialized when that argument goes against the plain text of the patent.  The Court additionally finds that Plaintiff's expert's declaration was entirely conclusory and unsupported.

The notice from the PTO also cannot provide cover to Plaintiff's positions taken in litigation.  The notice of allowance was transmitted on June 19, 2015.  (See Office Action at cover.)  This was well after the commencement of litigation and the briefing of the original motion to dismiss.  While it may be evidence that reasonable minds could differ, without any mention of 35 U.S.C. § 101 in the notice of allowance, this Court cannot draw such a conclusion.

Additionally, Plaintiff has failed to respond to the arguments that its position was unreasonable, merely reasserting that its position was correct and incorporating by reference its arguments in opposition to the motion to dismiss.  (Pl.'s Opp.

at 9.)  While it is true that if the arguments were correct, they would automatically be reasonable, Plaintiff failed to proffer support of why its arguments were reasonable even if incorrect.  All Plaintiff has done is repeat the original arguments by incorporation and cite to the after-issued PTO notice.

The test under Octane Fitness for whether a case is exceptional is determined on the totality of the circumstances. See Octane Fitness, 134 S. Ct. at 1756.  Further, the Court in Octane Fitness referred to the "the need in particular circumstances to advance considerations of compensation and deterrence."  Id. at 1756 n.6 (internal quotation and citation omitted).

Where a patentee "repeatedly offer[s] insupportable arguments on behalf of an obviously weak patent" including "wholly conclusory declarations" to support its position, this will support a finding that the case is "exceptional" under 35 U.S.C. § 285.  See eDekka LLC v. 3balls.com, Inc., No. 15-cv-541, 2015 WL 9225038, at *3-4 (E.D. Tex. Dec. 17, 2015).  Also looking at the conduct of Plaintiff here, this Court agrees with Defendant that Plaintiff's suit was dismissed to avoid a decision on the merits, but Plaintiff continued to litigate even when it realized it had an incredibly weak litigation position. See Eon-Net v. Flagstar Bancorp, 653 F.3d 1314, 1326-27 (Fed.

Cir. 2011) (affirming a finding of "indicia of extortion" where plaintiff filed over 100 lawsuits and immediately offered settlements between $25,000 and $75,000).  While not presenting "indicia of extortion," the present case presents the type of conduct of serial filings on a non-defensible patent that should be deterred.

Accordingly, this case is deemed "exceptional" under 35 U.S.C. § 285 due to Plaintiff's litigation conduct in propounding unreasonable positions in support of validity under 35 U.S.C. § 101, and then dismissing the case to avoid a decision on the merits.  The Court will in its discretion award fees under 35 U.S.C. § 285.  However, the Court will cabin the fee award to reflect that Plaintiff's conduct was not exceptional from the case's inception.  See LendingTree, LLC v. Zillow, Inc., 54 F. Supp. 3d 444, 462-64 (W.D.N.C. 2014) (finding the case exceptional under the totality of the circumstances and awarding attorneys' fees only for parts of the case; cf. Homeland Housewards, LLC v. Hastie2Market, LLC, 581 F. App'x 877, 881 (Fed. Cir. 2014) (declining to require courts to limit costs to those incurred to responding to specific acts of misconduct, but affirming decision to limit award to certain parts of the litigation under the court's discretion).  It was only in responding to the motion to dismiss that Plaintiff's litigation tactics took a turn, and so the Court will only award

28

fees to Defendant for work conducted on or after April 6, 2015, the date on which Plaintiff opposed the motion to dismiss. Further, by the time this date was reached, the handwriting on the wall for this sort of patent became clear under Alice and its progeny, such that the decision of Plaintiff to nonetheless continue the suit and force the Defendant to incur more counsel fees became exceptional under 35 U.S.C. § 285.

### C.   FEES FOR THE FEE MOTION

Assuming that the Court found the case exceptional and awarded fees, Defendant has also requested that it be awarded further fees in briefing the instant motion.  (See Def.'s Mot. Br. at 20-21.)  A party seeking attorneys' fees pursuant to 35 U.S.C. § 285 is permitted to seek fees for the fee petition itself.  Lugus IP, LLC v. Volvo Car Corp., Civ. No. 12-2906 (JEI/JS), 2015 WL 1399175, at *6 n.5 (D.N.J. Mar. 26, 2015) (citation omitted).  Having awarded Defendant partial fees based on its fee motion, the Court will also award Defendant partial fees for the litigation of the fee motion itself.  Because the fee motion was not entirely successful, the Court, exercising its "considerable discretion" will award only one-half of the fees requested for the fee motion.  See Bywaters v. United States, 670 F.3d 1221, 1228 (Fed. Cir. 2012); Renna v. Cty. of Union, N.J., Civ. No. 11-3328 (KM), 2015 WL 93800, at *11

(D.N.J. Jan. 7, 2015) ("While prevailing parties may collect
reasonable fees for the time spent preparing a fee petition,
courts may reduce these fees to reflect the partial success of
the petition." (internal quotation marks and citation omitted)),
report and recommendation adopted, 2015 WL 1815498 (D.N.J. Apr.
21, 2015); Precision Links Inc. v. USA Prods. Grp., Inc., No.
08-cv-576, 2014 WL 2861759, at *4 (W.D.N.C. June 24, 2014)
(awarding two-thirds of requested fees where defendant was
required to expend extra effort to litigate baseless
infringement claims).

     Defendant will be permitted to make a supplemental
submission regarding services rendered with respect to the reply
brief.  However, the Court will not permit the inclusion of any
hours expended in reviewing this decision or preparing the
supplemental submissions.

### D.   CALCULATION OF FEES

     Having concluded that the case is exceptional under 35
U.S.C. § 285 and having awarded partial attorneys' fees to
Defendant in its discretion, the Court must determine the amount
of the fee to be awarded.  In this district, Local Civil Rule
54.2 governs fee awards.  The party seeking fees must provide
affidavits setting forth the nature of services rendered, a
record of the dates and times of services rendered, a

description of the services rendered on each date, a description of the professional experience of each person rendering services, and the normal billing rate for the person rendering services.  L.Civ.R. 54.2(a).  Further, any fee agreements shall be submitted to the court.  L.Civ.R. 54.2(b).

"In the Third Circuit, courts calculate attorneys' fees pursuant to the 'lodestar' approach, which requires multiplying the amount of time reasonably expended by reasonable hourly rates."  Lugus IP, 2015 WL 1399175, at *6 (citations omitted).  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  Wagner v. Shinseki, 733 F.3d 1343, 1349 (Fed. Cir. 2013) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).  Even where the motion for fees is unopposed, the party seeking fees bears the burden of proving reasonableness.  See Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc., Civ. No. 11-6368 (JBS/KMW), 2012 WL 2369367, at *3 (D.N.J. June 20, 2012) ("Even if a default judgment case, therefore, Plaintiff must establish the threshold reasonable lodestar to the Court's satisfaction.").

Plaintiff has not challenged any of the time entries or the fees charged.  The entire opposition brief rests on the fact that no fees should be awarded at all because this case is not "exceptional" under 35 U.S.C. § 285, and fails to contemplate

31

what the result would be if, as has occurred, the Court
disagrees with that position.  In the Third Circuit, "when an
opposing party has been afforded the opportunity to raise a
material fact issue as to the accuracy of representations as to
hours spent, or the necessity for their expenditure, and
declines to do so, no reason [exists] for permitting the trial
court to disregard uncontested affidavits filed by a fee
applicant."  United States v. Eleven Vehicles, Their Equip. &
Accessories, 200 F.3d 203, 212 (3d Cir. 2000) (citation
omitted); see also Bayer CropScience AG v. Dow AgroSciences LLC,
No. 12-256 (RMB/JS), 2015 WL 108415, at *8 (D. Del. Jan. 5,
2015) (applying Third Circuit law to fee award under 35 U.S.C.
§ 285 to decline making a sua sponte reduction in hours billed),
recommendation adopted-in-part, 2015 WL 1197436 (D. Del. Mar.
13, 2015); Asahi Glass Co., Ltd. v. Guardian Indus. Corp., No.
09-515-SLR, 2013 WL 936451, at *2 (D. Del. Mar. 11, 2013)
(noting this obligation when assessing the amount of hours to
include in a fee award under 35 U.S.C. § 285).  However, this
principle does not relieve Defendant of its burden to adequately
support its fee request.

## 1.  HOURLY RATE

The first step in applying the lodestar formula is
determining the appropriate hourly rate.  As this Court

explained in Spectrum Produce, "[t]o show the reasonableness of a requested rate, counsel 'must produce satisfactory evidence -- in addition to their own affidavits -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  2012 WL 2369367 at *4 (internal modifications omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  "Mere conclusory affidavits from counsel are not enough to establish the reasonableness of a rate."  Id. (internal quotations omitted).

Three attorneys provided services to Defendant in litigating this case before this Court during the relevant time frame:  (1) Frank L. Corrado, Esq. of Barry, Corrado & Grassi, PC as local counsel in this court (Corrado Cert. [Docket Item 46-1] ¶ 2); (2) Daniel K. Nazer, Esq. of EFF (Nazer Cert. [Docket Item 48][5] ¶¶ 2, 4); and (3) Joseph C. Gratz, Esq. of Durie Tangri LLP (Gratz Cert. [Docket Item 48-1] ¶¶ 2, 4).[6]

---

[5] The certifications of Mr. Nazer and Mr. Gratz were initially filed as unsigned documents at Docket Items 46-2 and 46-3, respectively, and substituted by the filings of signed versions.

[6] Another attorney from EFF, Vera Ranieri, Esq. also provided services to Defendant in litigating this case before this Court, but her involvement ceased before April 6, 2015.  (Nazer Cert. ¶ 8 & Ex. C.)  In addition, two other attorneys, Denis Yanishevskiy, Esq. and Frank A. Mazzeo, Esq. of Ryder, Lu, Mazzeo & Konieczny LLC, provided assistance to Defendant in assisting with the negotiations that took place prior to EFF's involvement in the case.  (Yanishevskiy Cert. [Docket Item 46-5]

The submitted certifications contain the level of detail required by Local Civil Rule 54.2, and Plaintiffs do not dispute either the reasonableness of the hourly rate or the time expended for each task.  Each attorney certification contains the assertion by the respective attorneys that the rates charged are within the prevailing market rate for an attorney of comparable experience, and Plaintiff does not take issue with these hourly rates.  (Corrado Cert. ¶ 11; Nazer Cert. ¶ 13; Gratz Cert. ¶ 10.)  Each certification also attaches a resume of the attorney or their biographies from their firm websites, and the certifications from Mr. Nazer and Mr. Gratz also include brief summaries of the experience of Mr. Nazer and Mr. Gratz. (Corrado Cert. Ex. B; Nazer Cert. ¶ 6 & Ex. A; Gratz Cert. ¶ 5 & Ex. A.)

Further, all attorneys explain that their fee arrangement with Defendant is such that would only recover from a court-ordered award of attorneys' fees.  (Corrado Cert. ¶ 4; Nazer Cert. ¶¶ 11-12; Gratz Cert. ¶¶ 8-9.)  For Mr. Corrado, the fee agreement explained that "Hourly rates for any cooperating attorneys will be at their customary billing rates for equivalent matters.  In this case, the hourly rate for Frank L. Corrado is $450."  (Corrado Cert. ¶ 4.)  Similarly, for Mr.

---

¶¶ 3, 5).  However, because their involvement ended before April 6, 2015, their fees will not be considered.

Nazer, the fee agreement stated that "For purposes of fee awards, reimbursements, settlements, and other [sic] the hourly rates of the attorneys as of the date of this agreement are: Daniel Nazer, Staff Attorney ($570) . . . ." (Nazer Cert. ¶¶ 11-12.)  Finally, Mr. Gratz's agreement with Defendant did not spell out his hourly rate, but contained the proviso that "Durie Tangri shall be entitled to recoup the full value of its time worked at its customary rates from any such award . . . awarded by the Court based on time billed and costs disbursed by Durie Tangri." (Gratz Cert. ¶ 9.)  Mr. Gratz certified that his customary rate for this type of matter was $570 per hour.  (Id. ¶ 8.)

Where the party opposing fees fails to make a specific opposition to the rate requested, and where the rate is certified to be commensurate with the prevailing market rates in the community, the Court may determine that the rate is appropriate.  See Marshak v. Treadwell, Civ. No. 95-3794 (DRD), 2008 WL 413312, at *12 (D.N.J. Feb. 13, 2008), aff'd in relevant part, 595 F.3d 478 (3d Cir. 2009).  The Court has considered the the experience of the billing individuals and the work performed by each, and finds that Plaintiff will be charged with the following rates for each attorney who expended work on or after April 6, 2015 as follows:

```
Corrado:              $450/hour

Nazer:                $570/hour

Gratz:                $570/hour
```

### 2.   TIME REASONABLY EXPENDED

The Court next considers the reasonableness of the time expended on the matter.  For the services rendered with respect to appearing in this Court and defending the lawsuit, the three firms involved have submitted certifications.

Mr. Corrado submits that he spent a total of 16.5 hours working on this matter providing procedural advice, reviewing and filing pleadings and briefs, communicating with opposing counsel, and participating in telephone conference with the Magistrate Judge.  (Corrado Cert. ¶¶ 6 & Ex. A.)  Mr. Nazer submits that he spent 87.8 hours on this matter, analyzing claims, drafting briefs regarding the motion to dismiss, drafting the instant motion for fees, communicating with the client, and other general litigation and case management tasks. (Nazer Cert. ¶¶ 7, 15 & Ex. C.)  Finally, Mr. Gratz submits that he spent 11.5 hours on this matter, providing services such as analysis of claims, assisting with briefing in support of the motion to dismiss, communicating with opposing counsel, and other general litigation and case management tasks.  (Gratz Cert. ¶¶ 7, 12 & Ex. B.)  Each asserting is supported by the

itemized time sheets from the respective attorneys.  (Corrado Cert. Ex. A; Nazer Cert. Ex. C; Gratz Cert. Ex. C.)

As mentioned above, Plaintiff has not challenged any of the time entries.  The Court has reviewed the billing records for each attorney and finds the time entries reasonable as submitted.  However, the time requested must be constrained to time expended on or after April 6, 2015, consistent with the Court granting partial fees.  The Court has considered the itemized time sheets from each attorney, and finds that Plaintiff will be charged with the following amounts of hours for each attorney who expended work on or after April 6, 2015 as follows:

| | |
|---|---|
| Corrado: | 2.8 hours |
| Nazer: | 32.2 hours (litigation work) |
| | 14.85 hours (fee motion work)[7] |
| Gratz: | 1.3 hours |

As discussed in Section IV.C, <u>supra</u>, Defendant will be granted leave to submit additional documentation on the hours spent by Mr. Nazer reviewing the opposition to the fees motion and preparing a reply.  That submission must be made within seven (7) days.  Plaintiff will then be permitted to submit any opposition to those requested hours within seven (7) days.  Once

---

[7] This corresponds to one-half of 29.7 hours spent preparing the fee motion.  (<u>See</u> Nazer Cert. Ex. C.)

that information has been provided to the Court, the Court will determine how many additional hours will be awarded for the fee motion.  At that time, a final fee award will be entered.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion will be granted-in-part, such that the case is deemed "exceptional" under 35 U.S.C. § 285, partial attorneys' fees are awarded, and the hours billed for the time period of the partial award are approved as reasonable.  Defendant's request for fees for preparing the fee motion is also granted, with a one-half reduction in hours to reflect the partial success of the motion. Defendant will be granted leave to submit supplemental documentation in support of fees regarding services rendered for reply briefing on the fee application within seven (7) days. Plaintiff will be permitted to file opposition to the additional hours requested within seven (7) days of Defendant's filing. The accompanying order will be entered.


__March 30, 2016__                          __s/ Jerome B. Simandle__
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge


38