**LAWRENCE C. HERSH**
Attorney at Law
17 Sylvan Street, Suite 102B
Rutherford, NJ  07070
(201) 507-6300

**AUSTIN HANSLEY**
Austin Hansley PLLC
5050 Quorum Dr., Suite 700
Dallas, Texas 75254
(469) 587-9776

*Attorneys for Plaintiff Garfum.com Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————X
                                  : Civil Action No. 1:14-cv-05919-JBS-KMW

GARFUM.COM CORPORATION       :
                                    :
                       Plaintiff,    : **Declaration of Austin Hansley In Support of**
vs.                                     : **Plaintiff's Motion for Reconsideration**
                                    :
REFLECTIONS BY RUTH d/b/a       :
BYTEPHOTO.COM                   :
                                      :
                         Defendant.   :
———————————————————X

I, Austin Hansley, declare under penalty of perjury as follows:

        1.       I am over 18 years of age and am competent to execute this Declaration.  If called as a witness, I could and would competently testify to the following:

        2.       My name is Austin Hansley.  I am an attorney representing Garfum.com in the above-referenced litigation.

        3.       Attached hereto as Exhibit A is a true and correct copy of a letter sent by Plaintiff Garfum.com Corporation to Defendant's counsel on February 18, 2014.  The letter explains Plaintiff's infringement claims and attached a copy of the U.S. Patent No. 8,209,618 (the "'618

1

Patent") and included a detailed claim chart comparing the accused website with the claims. Defendant did not respond to said letter.

4.      Attached hereto as Exhibit B is a true and correct copy of the June 19, 2015, Non-Final Office Action issued by the USPTO regarding U.S. Patent Application No. 13/531,615 (the "'615 Application").   I downloaded a copy of this document from the USPTO's website, portal.uspto.gov on April 11, 2016.  The Non-Final Office Action did not reject the claims of the '615 Application under 35 U.S.C. § 101.  *See* Ex. 1-B.  The only substantive rejection was for double patenting.  *Id.* at 2-3.

5.      Attached hereto as Exhibit C is a true and correct copy of the Notice of Allowance for the '615 Application issued by the USPTO on September 21, 2015.  I obtained a copy of this document from the USPTO's website, portal.uspto.gov, on April 11, 2016.  Garfum.com submitted an information disclosure statement and request for continued examination.

6.      Attached hereto as Exhibit D is a true and correct copy of the Second Notice of Allowance for the '615 Application issued by the USPTO on January 14, 2016.  I obtained a copy of this document from the USPTO's website, portal.uspto.gov, on April 11, 2016.

7.      On February 20, 2016, Plaintiff paid an additional $700 in fees to reopen the prosecution of the '615 Application and filed a Second Request for Continued Examination and an Information Disclosure Statement, attaching all of the § 101 briefings filed in this case. Attached hereto as Exhibit E is a true and correct copy of the Second Request for Continued Examination filed with the USPTO on February 10, 2016.  I obtained a copy of this document from the USPTO's website, portal.uspto.gov, on April 11, 2016.

8.      Attached hereto as Exhibit F is a true and correct copy of the Information Disclosure Statement filed with the USPTO on February 10, 2016.  I obtained a copy of this

document from the USPTO's website, portal.uspto.gov, on April 11, 2016.

9.      On March, 18, 2016, the examiner for the '615 Application allowed the claims of the '615 Patent for a third time, issuing the Third Notice of Allowance, despite having been provided with all of the § 101 briefing in this case.  Attached hereto as Exhibit G is a true and correct copy of the Third Notice of Allowance for the '615 Application issued by the USPTO on March 18, 2016.  I obtained a copy of this document from the USPTO's website, portal.uspto.gov, on April 11, 2016.  Plaintiff proceeded to pay the issue fee for the '615 Application on March 23, 2016.  The '615 Application will issue as U.S. Patent 9,324,086 on April 26, 2016.

10.     Considering the low potential for damages in this case and Plaintiff's strong belief in the validity of the U.S. Patent No. 8,209,618 (the "'618 Patent") Plaintiff considered its offer to dismiss its claims of patent infringement with prejudice to be entirely reasonable.

11.     Given the USPTO's repeated allowance of nearly identical claims in the '615 Application, Plaintiff believed the strength of its § 101 arguments to be more than sufficient, and put those same arguments in its Response to Defendant's Motion to Dismiss.

12.     Despite Plaintiff's briefing in regards to the § 101 arguments, Defendant refused to drop its demand that Plaintiff agree to invalidate the '618 Patent.

13.     On April 10, 2015, for the first time, I became aware of case law supporting dismissing a case through a unilateral covenant not to sue and subsequent filing of a motion to dismiss the counterclaims of a defendant in order to bring an end to the subject litigation.  Attached hereto as Exhibit H is a copy of an email sent by an attorney with my Firm, Benton Patterson to me on April 10, 2015, detailing the case law at issue. Mr. Patterson had discovered this case law during other research on other matters and thought it was something that we should talk about with our client Plaintiff, Garfum Corporation.

14.     On April 10, 2015, Plaintiff unilaterally signed and returned to our Firm a covenant not to sue Defendant thereby causing Defendant's counterclaims to lack standing making them moot.  Plaintiff began working on its covenant not to sue with the intention of filing a motion to dismiss Defendant's counterclaims due to the CNS, well before this Court set a hearing on the Defendant's U.S.C. 101 motion to dismiss.  The notice of the hearing served to expedite the strategy Garfum had already planned on undertaking.

I declare under penalty of perjury under the laws of the state of Texas that the foregoing is true and correct.

Executed this 12th day of April, 2016 in Dallas, Texas.

_____
Austin Hansley – Attorney for
Plaintiff, Garfum Corporation

EXHIBIT A



Nichole E. Martiak
Registered Patent Attorney
email: nmartiak@sorinrand.com
direct dial: 732.839.0415

**FOR SETTLEMENT PURPOSES ONLY**

February 18, 2014

**VIA EMAIL**

Ms. Ruth C. Schonder Taylor
Mr. Steve Taylor
Bytephoto.com

      **Re:**      **U.S. Patent No. 8,209,618**

Dear Sir or Madam:

      We represent Garfum.com Corporation ("Garfum").  Garfum is the owner of U.S. Patent No. 8,209,618, a copy of which is enclosed ("the '618 patent").

      Garfum has spent substantial sums prosecuting and securing the '618 patent, which was issued on June 26, 2012. Building on this technology, Garfum has launched a business practicing the invention covered by the '618 patent. By securing the '618 patent, Garfum is entitled to exclusive use of the inventions covered by the '618 patent. This right is particularly important given that Garfum is practicing these inventions

      We have reason to believe that Bytephoto.com may be infringing one or more claims of the '618 patent. Enclosed please find a claim chart for claim 1 of the '618 patent in view of Bytephoto.com's website. While other claims are likely relevant, we feel that claim 1 serves as a good basis to begin our discussions.

      As our client hopes an amicable resolution to this issue can be reached, Garfum has no plans to initiate a patent infringement action at this time. However, the invention covered by the '618 patent is a valuable one that garners significant user attention and corresponding valuable web traffic. Your practicing of the invention covered by the '618 patent is likely driving traffic to your website and away from Garfum's. Based on the patent rights granted by the '618 patent,

**SORINRAND LLP**
Two Tower Center Boulevard • 24th Floor • East Brunswick, New Jersey • 08816
Phone: 732.839.0400 • Fax: 732.393.1901
www.sorinrand.com
New York, NY | East Brunswick, NJ | Radnor, PA



February 18, 2014
Page 2

and consistent with the purpose of patent protection, Garfum may be entitled to an injunction against your use of the invention so that web users looking to take part in the invention will go to Garfum's website, not yours. Garfum may also be entitled to damages for past use.

Please contact us to discuss your use, and how this dispute might be resolved without litigation. We look forward to your prompt reply, and would appreciate receiving a response by March 1, 2014.

Nothing contained in or omitted from this letter shall be deemed a waiver or abridgement of any of Garfum's rights, all of which are expressly reserved.

Sincerely,

*/nichole e. martiak/*

Nichole E. Martiak

US008209618B2

## (12) United States Patent
### Garofalo

(10) Patent No.: **US 8,209,618 B2**
(45) Date of Patent: **Jun. 26, 2012**

(54) **METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK**

(76) Inventor: **Michael Garofalo**, Howell, NJ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 726 days.

(21) Appl. No.: **12/146,839**

(22) Filed: **Jun. 26, 2008**

(65) **Prior Publication Data**

US 2009/0019375 A1 Jan. 15, 2009

**Related U.S. Application Data**

(60) Provisional application No. 60/946,336, filed on Jun. 26, 2007.

(51) **Int. Cl.**
*G06F 3/14* (2006.01)
*G06F 3/17* (2006.01)

(52) **U.S. Cl.** .............. **715/753**; 725/24; 725/32; 725/91; 705/7.42; 705/12; 705/14; 709/206; 700/1; 700/91; 382/232

(58) **Field of Classification Search** ................. 715/500, 715/753; 705/14.72, 26.41, 52; 386/278; 707/621, 758
See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 7,162,433 | B1 * | 1/2007 | Foroutan | 705/7.42 |
| 2001/0049821 | A1 * | 12/2001 | Ochi | 725/32 |
| 2002/0116716 | A1 * | 8/2002 | Sideman | 725/91 |
| 2005/0281470 | A1 * | 12/2005 | Adams | 382/232 |
| 2006/0048186 | A1 * | 3/2006 | Alterman | 725/45 |
| 2007/0038717 | A1 * | 2/2007 | Burkholder et al. | 709/206 |
| 2007/0186230 | A1 * | 8/2007 | Foroutan | 725/24 |
| 2007/0244570 | A1 * | 10/2007 | Speiser et al. | 700/1 |
| 2007/0244585 | A1 * | 10/2007 | Speiser et al. | 700/91 |
| 2007/0244749 | A1 * | 10/2007 | Speiser et al. | 705/14 |
| 2008/0004946 | A1 * | 1/2008 | Schwarz | 705/12 |

#### OTHER PUBLICATIONS

Meeyoung Cha, Haewoon Kwak, Pablo Rodriguez, Yong-Yeol Ahn, and Sue Moon, I Tube, You Tube, Everybody Tubes: Analyzing the World's Largest User Generated Content Video System, Oct. 24-26, 2007, IMC 07.*

* cited by examiner

*Primary Examiner* — Ruay Ho
(74) *Attorney, Agent, or Firm* — Jon Fallon, Esq.

(57) **ABSTRACT**

In one embodiment of the present invention, a method for sharing multi-media content among a plurality of users in a computer network comprises creating a plurality of user accounts, each of said user accounts corresponding to one of the plurality of users, and having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network; forming a user network including one or more of the plurality of user accounts in communication with one or more other user accounts and to the uploaded multi-media content via the computer network; categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content; organizing the uploaded multi-media content in a competitive format; and establishing a hierarchy for the uploaded multi-media content within the competitive format as a function of a competitive measurement system.

**10 Claims, 13 Drawing Sheets**





*FIG. 1*



*FIG. 2*



*FIG. 3*

*FIG. 4*





FIG. 5

*FIG. 6*





*FIG. 7*

700



FIG. 8

800

*FIG. 9*





*FIG. 10*



*FIG. 11*



FIG. 12



FIG. 13

US 8,209,618 B2

**1**

## METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

### RELATED APPLICATION DATA

This application claims priority to U.S. Provisional Application Ser. No. 60/946,336, filed Jun. 26, 2007, and titled "Interactive Audiovisual Network and Method Thereof," the disclosure of which is herein incorporated by reference in its entirety. This application also claims priority to U.S. Provisional Application Ser. No. 61/037,892, filed Mar. 19, 2008, and titled "Interactive Audiovisual Network and Multimedia Player Therefor," the disclosure of which is also incorporated herein by reference in its entirety.

### BACKGROUND

1. Technical Field

Embodiments of the present invention generally relate to a method for sharing multi-media content among users in a global computer network. More specifically, embodiments of the present invention relate to a method for managing an interactive computer network involving user-submitted multi-media content in a competitively structured format.

2. Description of the Related Art

Social interaction on computer networks has increased in popularity since the time when computer users first communicated with one another over a telecommunication connection. What started with electronic messages exchanged on the dial-in bulletin board systems ("BBS") in the early 1980s has blossomed into a variety of "online communities," such as, for example, chat rooms, on-line forums, web logs ("blogs"), as well as specialty Web sites that are dedicated to particular subjects, e.g., digital photographs. As data transfer rates continue to increase in step with the improvements in high speed data transfer technology, so too does the demand for computer networks that provide individuals with more interactive and creative features.

Some computer networks have tried to incorporate these features. Some are set-up in a manner that provides the user with tools and functions that facilitate communication between the users. They permit individuals to meet, talk, share ideas, and become acquainted without the users ever leaving the comfort of their own home. Typically these computer networks allocate storage space so that users can create, store and share information. This space is hosted by the computer network and available to anyone in the public domain with access to the Internet. Even more advanced computer networks permit users to identify individuals with distinct labels, such as, "friends," "buddies," and "links," among others. These labels help the user to organize their contacts, whether personal friends, relatives, or individuals in which they share a common interest, into a "social network." Such social networks simplify communication because the user can choose the individuals to whom they communicate regularly. But, computer networks that simply offer the user an scheme to organize those individuals to whom they send messages, chat, and share personal information, does not meet the needs of the users that wish to use their social network for higher-level interaction that involves complex data and information, like audio, videos, and images.

Thus, there is a need for an improved interactive portal that permits users to share such content in a social network setting

**2**

and that utilizes this content in a manner to increase the interaction between the users of the portal.

### SUMMARY

Embodiments of the present invention relate to a method for managing an interactive computer network involving user-submitted multi-media content in a competitively structured format. In one embodiment of the present invention, a method for sharing multi-media content among a plurality of users in a computer network comprises creating a plurality of user accounts, each of said user accounts corresponding to one of the plurality of users, and having a plurality of inter-active features including a first feature that permits the user to upload the multi-media content to the computer network; forming a user network including one or more of the plurality of user accounts in communication with one or more other user accounts and to the uploaded multi-media content via the computer network; categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content; organizing the uploaded multi-media content in a competitive format; and establishing a hierarchy for the uploaded multi-media content within the competitive format as a function of a competitive measurement system; wherein the competitive measurement system includes a rating measure assigned to the uploaded multi-media content by the users via the computer network.

In another embodiment of the present invention, a method of facilitating an online contest within a computer network comprises creating a plurality of user accounts, each of the user accounts corresponding to one of the plurality of users, and having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network; providing a user interface for the users to access the first interactive feature, the user interface including an embedded multi-media player adapted for viewing the uploaded multi-media content; categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content; organizing the uploaded multi-media content in a competitive format having a plurality of competitive rounds based on the quantity of multi-media content being organized; and applying a competitive measurement system to advance particular uploaded multimedia through the plurality of competitive rounds; wherein the competitive measurement system includes a rating measure assigned to the uploaded multi-media content by the users via the computer network.

In yet another embodiment of the present invention, a computer readable medium comprising a computer program having executable code, the computer program for enabling an interactive multi-media network, the computer program comprises a first set of instructions for creating a plurality of user accounts, each of the user accounts corresponding to one of the users and having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network; a second set of instructions for forming a user network including one or more of the user accounts in communication with one or more other user accounts and to the uploaded multi-media content via the computer network; a third set of instructions for categorizing the uploaded multi-media content in accordance with a genre selected by the user based on the subject matter of the uploaded multi-media content; a fourth set of instructions for organizing the uploaded multi-media content in a competitive format in a manner consistent with the genre; and a fifth set of instructions for establishing a hierarchy for the uploaded multi-media content within the competitive format as a func-

US 8,209,618 B2

3

tion of a competitive measurement system, wherein the competitive measurement system includes a rating measure assigned to the uploaded multi-media content by the users after viewing the uploaded multi-media content via the computer network.

BRIEF DESCRIPTION OF THE DRAWINGS

So the manner in which the above recited features of the present invention can be understood in detail, a more particular description of embodiments of the present invention, briefly summarized above, may be had by reference to embodiments, several of which are illustrated in the appended drawings. It is to be noted, however, the appended drawings illustrate only typical embodiments of embodiments encompassed within the scope of the present invention, and, therefore, are not to be considered limiting, for the present invention may admit to other equally effective embodiments, wherein:

FIG. **1** illustrates a schematic diagram of the components in an example of an interactive portal that is made in accordance with the concepts of the present invention;

FIG. **2** illustrates a block diagram of a database used in the embodiments of the interactive portal, such as the interactive portal of FIG. **1**;

FIG. **3** illustrates an example of a user interface that is presented to the user of the interactive portal;

FIG. **4** illustrates a flow chart that describes a method for organizing the shared content in accordance with feedback provided by the users of the interactive portal;

FIG. **5** is a screenshot of the graphical user interface (GUI) of FIG. **3** illustrating an example of the home link of the interactive portal;

FIG. **6** is a screenshot of the GUI of FIG. **3** illustrating an example of the challenger link of the interactive portal;

FIG. **7** is a screenshot of the GUI of FIG. **3** illustrating an example of the challenger home link of the interactive portal;

FIG. **8** is a screenshot of the GUI of FIG. **3** further illustrating another example of the challenger home link of the interactive portal;

FIG. **9** is a screenshot of the GUI of FIG. **3** illustrating an example of the search function of the interactive portal;

FIG. **10** is a screenshot of the GUI of FIG. **3** for gathering feedback from the user on the shared content for use in the method for organizing the shared content based on this feedback, such as the method of FIG. **4**;

FIG. **11** is a screenshot of the GUI of FIG. **3** illustrating an example of the category link of the interactive portal;

FIG. **12** is a screenshot of the GUI of FIG. **3** illustrating an example of the winners club link of the interactive portal; and

FIG. **13** is a screenshot of the GUI of FIG. **3** illustrating an example of the video off link of the interactive portal.

The headings used herein are for organizational purposes only and are not meant to be used to limit the scope of the description or the claims. As used throughout this application, the word "may" is used in a permissive sense (i.e., meaning having the potential to), rather than the mandatory sense (i.e., meaning must). Similarly, the words "include", "including", and "includes" mean including but not limited to. To facilitate understanding, like reference numerals have been used, where possible, to designate like elements common to the figures.

DETAILED DESCRIPTION

Embodiments of the present invention generally relate to a method for sharing multi-media content among users in a

4

global computer network. More specifically, embodiments of the present invention relate to a method for managing an interactive computer network involving user-submitted multi-media content in a competitively structured format.

Systems that are designed in accordance with the present invention are configured in a manner that permits the users to communicate with other users via electronic mechanisms (e.g., email, chat, text messages) in the context of a social network setting. These systems, however, permit the users to share digital content with the other users of the system. This includes video content, audio content, and image content that typically is not supported by the computer networks discussed in the Background section above. More particularly, a feature of the systems described herein organize the shared content so as to cause the users that provide the shared content to receive rewards, e.g., monetary rewards, and/or other distinctions. More details and an example of the method employed by the embodiments of these systems to select and arrange the shared content will be discussed in more detail below in connection with FIG. **4** below. Before continuing with that discussion, however, a general discussion of the architecture of the system as discussed in connection with FIG. **1**, follows immediately below.

Referring now to the drawings, FIG. **1** illustrates the general architecture of an example of an interactive portal **100** that operates in accordance with concepts of the present invention. Interactive portal **100** is described herein as an online computer network that connects users in a social network environment. More particularly, interactive portal **100** of FIG. **1** includes a computer network **103** with content **106** that is accessible to users **109**, e.g., users **109**A-F, via a user interface **112**. The interface is presented to users **109** on computing machines **115** that are connected to computer network **103**. Examples of content that content **106** can be include, but are not limited to, multi-media content (e.g., data, music, video, and images), software content (e.g., downloadable/executable programs), and Internet content (e.g., Web sites), among others. In many embodiments, content **106** also includes shared content **118** that includes, but is not limited to, video data, audio data, image data, and other digital data that users **109** can upload onto computer network **103** via user interface **112**. As discussed in more detail below, the data that is shared by users **109** may include, for example, music videos, audio recordings, comedy routines, short films, blooper videos, and other homemade digital recordings and pictures that are created, captured, or otherwise acquired by users **109**.

It will be understood by those having ordinary skill in the art that certain concepts and implementations of interactive portal **100** described herein may be conveniently implemented using one or more computing machine **115** that are programmed according to the teachings of the present specification, as will be apparent to those of ordinary skill in the computer art. For example, various aspects of a method for sharing multi-media content using an interactive interface described herein, may be implemented as machine-executable instructions (i.e., software coding), such as program modules executed by one or more machines.

Typically a program module may include routines, programs, objects, components, date structures, etc. that perform specific tasks. Appropriate machine-executable instructions can readily be prepared by skilled programmers based on the teachings of the present disclosure, as will be apparent to those of ordinary skill in the software art. Such executable software may be a computer program product that employs a machine-readable medium. Example computer programs include, but are not limited to, an operating system, a browser application, a micro-browser application, a proxy applica-

US 8,209,618 B2

**5**

tion, a business application, a server application, an email application, an online service application, an interactive television client application, an ISP client application, a gateway application, a tunneling application, and any combinations thereof. A computer-readable medium may be any medium that is capable of storing and/or encoding a sequence of instructions for execution by a machine (e.g., a computing device) and that causes the machine to perform any one of the methodologies and/or embodiments described herein. Examples of a computer-readable medium include, but are not limited to, a magnetic disk (e.g., a conventional floppy disk, a hard drive disk), an optical disk (e.g., a compact disk "CD", such as a readable, writeable, and/or re-writeable CD; a digital video disk "DVD", such as a readable, writeable, and/or rewriteable DVD), a magneto-optical disk, a read-only memory "ROM device, a random access memory "RAM" device, a magnetic card, an optical card, a solid-state memory device (e.g., a flash memory), an EPROM, and EEPROM, and any combinations thereof. A computer-readable medium, as used herein, is intended to include a single medium as well as a collection of physically separate media, such as, for example, a collection of compact disks or one more hard disk drives in combination with a computer memory.

User interface **112**, for example, may conform to a set of machine-executable instructions that is implemented on computing machines **115** and that facilitate the interaction of users **109** via computer network **103**. These instructions may include instructions and/or program modules that permit users **109** to upload, download, stream, modify, and/or manipulate shared content **118**. In one embodiment of interactive portal **100**, user interface **112** provides a graphical user interface (GUI) that has graphical icons, visual indicators, and other graphical elements that correspond to the various features, functions, and operations of interactive portal **100**. An example of interactive portal **100** includes such machine-executable instructions so as to cause users **109** to access content **106**, including shared content **118**, of interactive portal **100** via a Web browser or similar browser-type applications. These are well-known in the art. Another embodiment of interactive portal **100** includes machine-executable instructions for user interface **112** that are implemented as embedded software on computing machines **115**. This interface may have icons, access bars, access panels, and/or other selectable feature. Often, the embedded software permits users **109** to connect to the content **106** of interactive portal **100** without the use of a Web browser. Still other examples of interactive portal **100** include machine-executable instructions for user interface **112** that permit users **109** to access content **106** via content delivery services, e.g., cable services, satellite services, fiber optic, DSL, and other digital and/or high speed data transmission technologies. An example of a user interface that is suited for use as user interface **112** of the embodiments of interactive portal **100** will be discussed in more detail in connection with FIG. **3** below.

Computing machines **118** that are used by users **109** will be generally recognized in the art. Examples of machines for use as computing machines **118** include, but are not limited to, a general purpose computer; a special purpose computer; a computer workstation; a terminal computer; a notebook/laptop computer; a server computer; a handheld device (e.g., tablet computer, a personal digital assistant "PDA", a mobile telephone, etc.); a web appliance; a network router; a network switch; a network bridge; a set-top box "STB"; video tape recorder "VTR"; a digital video recorder "DVR"; a digital video disc "DVD" device (e.g., a DVD recorder, a DVD reader); any machine, component, tool, equipment capable of executing a sequence of instructions that specify an action to

**6**

be taken by that machine, and any combinations thereof. In one example, a computing device may include and/or be included in, a kiosk. In another example, a computing device includes a mobile device. In yet another example, a computing device includes a device configured for display of video and/or audio content accessed over a network.

In the present example of interactive portal **100**, users **109** access the interactive portal via computing machines **109**, each in the form of a computer system **121** within which a set of instructions for causing the computing device to perform any one or more of the aspects and/or methodologies of the present disclosure may be executed. It should be noted that although computer system **121** itself and its components may be shown as singular entities, each component and computer system **121** may include any number of components configured to perform one or more certain functionalities. For example, multiple computer systems **121** may combine to perform any one or more of the aspects and/or methodologies of the present disclosure. Additionally any one aspect and/or methodology of the present disclosure may be dispersed across any number of computer network **105** or across any number of computer system components.

Computer system **121** includes a processor **124** and a memory **127** that communicate with each other, and with other components, via a bus **130**. Bus **130** may include any of several types of bus structures including, but not limited to, a memory bus, a memory controller, a peripheral bus, a local bus, and any combinations thereof, using any of a variety of bus architectures. Memory **127** may include various components (e.g.; machine readable media) including, but not limited to, a random access memory component (e.g., a static RAM "SRAM", a dynamic RAN "DRAM", etc.) a read only component, and any combinations thereof. In one example, a basic input/output system **133** (BIOS), including basic routines that help to transfer information between elements within computer system **121**, such as during start-up, may be stored in memory **127**. Memory **127** may also include (e.g., stored on one or more machine-readable media) instructions **136** (e.g., software) embodying any one or more of the aspects and/or methodologies of the present disclosure. In another example, memory **127** may further include any number of program modules including, but not limited to, an operating system, one or more application programs, other program modules, program data, and any combinations thereof.

Computer system **121** may also include a storage device **139**. Examples of a storage device (e.g., storage device **139**) include, but are not limited to, a hard disk drive for reading from and/or writing to a hard disk, a magnetic disk drive for reading from and/or writing to a removable magnetic disk, an optical disk drive for reading from and/or writing to an optical media (e.g., a CD, a DVD, etc.), a solid-state memory device, and any combinations thereof. Storage device **139** may be connected to bus **130** by an appropriate interface (not shown). Example interfaces include, but are not limited to, SCSI, advanced technology attachment (ATA), serial ATA, universal serial bus (USB), IEEE 1394 (FIREWIRE), and any combinations thereof. In one example, storage device **139** may be removably interfaced with computer system **121** (e.g., via an external port connector (not shown)). Particularly, storage device **139** and an associated machine-readable medium **142** may provide nonvolatile and/or volatile storage of machine-readable instructions, data structures, program modules, and/or data for computer system **121**. In one example, software **136** may reside, completely or partially, within machine-readable medium **142**. In another example, software **136** may reside, completely or partially, within processor **124**.

US 8,209,618 B2

7

Computer system **121** may also include an input device **145**. In one example, user **109** of computer system **121** may enter commands and/or other information into computer system **121** via input device **145**. For example, user **109** may utilize a computing device with an input device, such as input device **145** to enter information corresponding to the personal information that is solicited by one or more screens of user interface **112** of interactive portal **100** of FIG. **1**. Examples of an input device **145** include, but are not limited to, an alphanumeric input device (e.g., a keyboard), a pointing device, a joystick, a gamepad, an audio input device (e.g., a microphone, a voice response system, etc.), a cursor control device (e.g., a mouse), a touchpad, an optical scanner, a video capture device (e.g., a still camera, a video camera), a touchscreen, and any combinations thereof. Still other examples of an input device include a storage device **148** (e.g., a removable disk drive, a flash drive, etc.). Input device **145** may be interfaced to bus **130** via any of a variety of interfaces (not shown) including, but not limited to, a serial interface, a parallel interface, a game port, a USB interface, a FIREWIRE interface, a direct interface to bus **130**, and any combinations thereof.

Computer system **121** may further include a video display adapter **152** for communicating a displayable image to a display device, such as display device **155**. For example, video display adapter **152** may be utilized to display an interface for accessing one or more content items over a network to display device **155**. Examples of a display device include, but are not limited to, a liquid crystal display (LCD), a cathode ray tube (CRT), a plasma display, and any combinations thereof. In addition to a display device, a computer system **121** may include one or more other peripheral output devices including, but not limited to, an audio speaker, a printer, and any combinations thereof. Such peripheral output devices may be connected to bus **130** via a peripheral interface **158**. Examples of a peripheral interface include, but are not limited to, a serial port, a USB connection, a FIREWIRE connection, a parallel connection, and any combinations thereof.

A digitizer (not shown) and an accompanying pen/stylus, if needed, may be included in order to digitally capture freehand input. A pen digitizer may be separately configured or coextensive with a display area of display device **155**. Accordingly, a digitizer may be integrated with display device **155**, or may exist as a separate device overlaying or otherwise appended to display device **155**.

Users **112** may also input commands and/or other information to computer system **121** via a network interface device **161**. A network interface device, such as network interface device **161** may be utilized for connecting computer system **121** to one or more of a variety of networks, such as computer network **103**, and one or more remote computing devices **164**, and/or machines **121**, connected thereto. Examples of a network interface device include, but are not limited to, a network interface card, a modem, and any combination thereof.

Computer network **103** is a network that may include one or more network elements configured to communicate data (e.g., direct data, deliver data). Examples of a network element include, but are not limited to, a router, a server, a switch, a proxy server, an adapter, an intermediate node, a wired data pathway, a wireless data pathway, and any combinations thereof. Examples of a network or network segment include, but are not limited to, a wide area network (e.g., the Internet, an enterprise network), a local area network (e.g., a network associated with an office, a building, a campus or other relatively small geographic space), a telephone network, a direct connection between two computing devices, and any combinations thereof.

8

These networks may employ a wired and/or a wireless mode of communication. Various communication protocols (e.g., HTTP, WAP, TCP/IP) and/or encryption protocols (e.g., UDP) may be utilized in connecting and/or for communication over a network, such as computer network **103**. In general, any network topology may be used. Information (e.g., data, software **136**, etc.) may be communicated to and/or from computer system **121** via network interface device **161**. In yet another example, storage device **139** may be connected to bus **130** via network interface device **161**. In still another example, input device **180** may be connected to bus **150** via network interface device **161**.

Computer network **103** in interactive portal **100** of FIG. **1** may include a server apparatus **167** that is connected to computing machines **115** via a global computer network **170**, e.g., the Internet. The term "Internet" generally refers to any collection of distinct networks working together to appear as a single network to users **109**. The term refers to the so-called world wide "network of networks" (e.g., the World Wide Web ("WWW"), where each network is connected to each other using the Internet Protocol (IP) and other similar protocols. Internet **170** provides file transfer, remote log in, electronic mail, news and other services. Thus, as used herein, the term "Internet," refers to any computer network.

Server apparatus **167** is connected to Internet **170** through a router **173** and a **176**, e.g. switch **176** A-B. It is known in the relevant art(s) that routers (e.g., router **173**) forward packets between networks. Router **173** forwards information packets between server apparatus **167** and computing devices **121** over Internet **170**. A load balancer **179** balances the traffic load across multiple mirrored servers **182**, **185**, **188**, and a firewall **191** provides protection from unauthorized access to server apparatus **167**. Switch **176**A may act as a gatekeeper to and from Internet **170**. Switch **176**B allows the components of server apparatus **167** to be interconnected in a LAN or WAN configuration. This permits data to be transferred to and from the various components of server apparatus **167**. It is noted that the components that appear in server apparatus **167** refer to an exemplary combination of those components that would need to be assembled to create the infrastructure in order to provide the tools and services contemplated by interactive portal **100**, as well as some other embodiments of interactive portal **100** made in accordance with concepts of the present disclosure. It will be readily appreciated by those having ordinary skill in the art that all of the components that are found "inside" of server apparatus **167** may be connected and may communicate via a wide or local area network (respectively, WAN or LAN).

Server apparatus **167** includes an application server **182** or a plurality of application servers **182**, as well as databases **194**, **197**. Examples of applications servers that application server **182** can be include a multi-media server **182**A, web application server **182**B, a computer server **182**C, and a messaging server **182**D, among others. Multi-media content server **182**A stores the digital content and provides it to other components of server apparatus **167**, and to computing machines **112**, as desired. This content may be configured separately from web application server **182**B so as to increase the scalability of server apparatus **167**. In an alternative configuration, web application server **182**B and multi-media content server **182**A are configured together.

Examples of content formats that can be managed by multi-media content server **182**A include, but are not limited to, Graphical Interchange Format ("GIF"), Joint Photographics Experts ("JPEG"), Portable Network Graphics ("PNG"), Tagged Image File ("TIFF"), Audio Video Interleave ("AVI"), Waveform ("WAV"), Audio Interchange File Format

US 8,209,618 B2

9

("AIFF"), Au File Format ("AU"), Windows Media Audio ("WMA"), WavePack ("WV"), Free Lossless Audio Code ("FLAC"), Monkey's Audio ("APE"), True Audio ("TTA"), Apple Lossless ("AL"), MPEG-1 Audio Layer 3 ("MP3"), Advanced Audio Coding ("AAC"), Extensible Music Format ("XMF"), 3GP and its derivatives, Advanced Systems Format ("ASF"), DVR-MS, Moving Picture Experts Group ("MPEG") and its derivatives, IFF, Matroska Multimedia Container ("MKV"), MOV, OGG, Ogg Media File ("OGM"), RealMedia, Media Player Classic ("MPC"), RAW, Global System for Mobile Communications ("GSM"), Dialogic ADPCM ("VOX"), DCT, Adaptive Transform Acoustic Coding ("ATAC"), RealAudio ("RA") and its derivatives, DVF, BMP and Bitmap, Portable Pixmap File Format ("PPM"), Portable Greymap File Format ("PGM"), Portable Bitmap File Format ("PBM"), Portable Anymap ("PNM"), Scalable Vector Graphics ("SVG"), Shockwave Flash ("SWF"), Portable Document Format ("PDF"), encapsulated PostScript, Windows Metafile, and other formats that are used to otherwise electronically store and/or transmit data. Of course, this is not an exhaustive list, but, rather, examples of formats that the multi-media content servers that are used for multi-media server 182A in embodiments of interactive portal 100.

Messaging server 182D is configured to store and distribute electronic communications to and from computing machines 112. Examples of electronic communications include, but are not limited to, electronic mail and electronic messages ("e-mail"), text messages, and chat messages, among others. Although shown as a single server in server apparatus 167, messaging server 182D may include a number of servers that are each configured to exchange one or more of the types of electronic messages mentioned previously. For example, messaging server 182D may include an email server (not shown) that is configured to send and receive the electronic communications, as well as it acts as a repository for electronic communications received from Internet 170. Generally, servers of the type used as messaging server 182D (and the email server, if necessary) include a storage area, a set of user definable rules, a list of users, and a series of communication modules that are consistent with the type of electronic communication.

Web application server 182D and computer server 182C serve as the application layer of the present example of interactive portal 100. More specifically, web application server 182B is a system that sends out Web pages in response to Hypertext Transfer Protocol (HTTP) request from remote browsers (i.e., users 115). That is, web application server 182B provides user interface 102 to users 109 of interactive portal 100 in the form of Web pages.

Computer server 182C may include a central processing unit ("CPU"), a random access memory ("RAM") for temporary storage of information, and a read-only memory ("ROM") for permanent storage of information. Computer server 182C is generally controlled and coordinated by an operating system that is itself a set of machine executable instructions, similar to software 136 discussed above. This operating system controls allocation of system resources and performs tasks such as processing, scheduling, memory management, networking and I/O services, among other things. For example, the operating system resident in system memory and executed by the CPU coordinates the operation of the other elements of server apparatus 167.

Second switch 176B may include inter-process communications protocols 140A ("IPCP"). These are sets of rules for marshalling and unmarshalling parameters and results. This is the activity that takes place at the point where the control path in the calling and called process enters or leaves the IPCP

10

domain. The IPCP is essentially a set of rules for encoding and decoding information transmitted between multiple processes.

Firewall 191 is configured to shield application servers 182, databases 194, 197, from Internet 170. It is a dedicated gateway machine with special security precaution software that is designed to protect the loosely administered network elements from hidden invasion. Firewalls for use as firewall 191 are generally well-known in the art, therefore, no additional description is necessary.

Databases 194, 197 store software, descriptive data, digital content, system data, and any other data item required by the other components of server apparatus 167. Databases used as databases 194, 197 are provided as, for example, a database management system ("DBMS"), an object-oriented database management system ("ODBMS"), a relational database management system (e.g., DB2, ACCESS, etc.), a file system, and/or another conventional database package. In alternative examples, each of database 194, 197 are implemented using object-oriented technology or via text files that are accessed with a Structured Query Language (SQL) or other tools known to those having ordinary skill in the art.

In view of the foregoing discussion of server apparatus 167, it will be readily appreciated by those having ordinary skill in the art that computer network 103 as described herein will include one or more of the components discussed above. The type, quantity, and selection of such components may depend, however, on the type of architecture that is required to implement the various embodiments of the interactive portal 100. It may further depend on the architecture that is desired. For example, embodiments of interactive portal 100 are configured in accordance with architecture that permits users 109 to view, upload, download, stream, modify, or manipulate content 106, and, in particular, shared content 118. They are also configured to permit users 115 to communicate, to exchange data, and to implement the other features of interactive portal 100 as described herein. Examples of architecture that is suited for use with the features in the embodiments of the interactive portals includes, but is not limited to, client-server architecture, peer-to-peer architecture, and file transfer protocol ("FTP") architecture, among others. Examples of peer-to-peer architectures that might be used include, but are not limited to, pure peer-to-peer networks, friend-to-friend networks, and darknet networks, among others. Whereas such broad concepts of architecture, software and the like currently exist in the art, a detailed explanation of the relevant architecture and such concepts is not needed.

Referring now to FIG. 2, and also FIG. 1, a block diagram of an example of a database 200 that is compatible with one or more embodiments of interactive portal 100 is illustrated. Database 200 includes data categories 203, e.g., 203A-C, that are further organized into data groups 206, e.g., user data 209, profile data 212, location data 215, zip code data 218, format data 221, genre date 224, length data 227, feedback data 230, among others. Databases that are used as database 200 are generally used to manage, organize, and categorize the information that is collected from the users of the interactive portal. These are implemented on, for example, database 194, 197 of FIG. 1, as a DBMS, an ODBMS, a relational database management system (e.g., DB2, ACCESS, etc.) or another conventional database packages.

Although only specific examples of data categories 203 (and data groups 206) are show in the embodiment of database 200 in FIG. 2, it will be appreciated by those having ordinary skill in the art that any number of categories and groups are available for use in database 200. Thus, the illustration of database 200, and the discussion herein, should not

US 8,209,618 B2

**11**

limit in anyway the scope and spirit of the present disclosure. Rather, database **200** is described herein as one example of the way the information in the interactive portals is implemented in accordance with concepts of the present invention.

Information from database **200** is identified in accordance with each individual user. It may be linked together into cohesive units, such as, for example, user accounts, corporate accounts, and other types accounts that the information in database **200** to the users of the interactive portal. In the present example, data groups **206** are configured in a manner that organizes the information into individual user accounts. These include information that is entered by the users via the user interface or other collection method, e.g., via telephone.

Data groups **206** include several categories of information, including, but not limited to, descriptive data, shared content data, rating data, as well as other data items. Generally, descriptive data refers to information that describes the user or characteristics of the user. It may also include elements that describe attributes of the user, such as, for example, gender, marital status, occupation, and the like. The descriptive data can be further grouped into user data **209**, profile data **212**, location data **215**, and zip code data **218**, each of which include any number of data elements.

Content data refers to data that describes the content that is shared by users of the interactive portal. It may also include data elements that describe attributes of the content, such as, for example, format, category, length, rating data, and the like. The content data can be further grouped into format data **221**, genre data **229**, length data **227**, feedback data **230**, each of which include any number of data elements.

Other data items relate to operating components of the exemplary system. Such other data items include favorite content **233**, messages **236**, bulletin board **239**, as well as preference data. Preference data refers to data that describes the preferences that the users of the interactive portal have with respect to one another, and with respect to their individual account settings. The data fields that are used to capture descriptive data can also be used to capture preference data, as well. In one example, in the descriptive context someone might "have a specific zip code;" while in the preference context that person might "prefer to meet people in that zip code." Most preference data in this example when presented in the user interface (e.g., GUI) is presented in hypertext markup language ("HTML"). So, embodiments of the interactive portal can include search functions that permit user to type any search terms they desire into a search box so as to search the descriptive data and get the results.

Referring now to FIG. **3**, a schematic diagram of an example of a user interface **300** that allows users to access the features of the interactive portal and is designed to allow a user to navigate the content of embodiments of the interactive portal, such as interactive portal **100** of FIG. **1**, is illustrated. It may include, for example, a screen **303**, e.g., screens **303**A-F, that includes an interactive area **306** that has a multi-media area **309**, a challenge area **312**, and a navigation area **315** that are each configured to present to the user information, data, and other content that is found on the interactive portal.

Generally, multi-media area **309** of user interface **300** has a multi-media player **315** that is configured to display, play, and otherwise present the shared content in a manner that is visually and audibly accessible to the user. In accordance with embodiments of the present invention, the multi-media player **315** may be an embedded player, such that it may be embedded on any accessible webpage or interactive portal. For example, the multi-media player **315** may be embedded on an individual's personal home webpage not associated with the interactive network described herein. When embedded on

**12**

such individual's home webpage, any features and embodiments disclosed herein would be available via the multimedia player **315**, whereby the multi-media player acts **315** as an embedded portal to the interactive network described herein.

Challenge area **312** includes category links **321**, e.g., category links **321**A-F, that are each associated with a content list **324** that includes shared content **327** that is stored on the interactive portal. Navigation area **315** has a number of navigation links **330** that permit the user to navigate to other ones of screen **303** of user interface **300** with an input device, e.g., by "pointing and clicking on the appropriate link."

In the present example, navigation links **330** include, 1) a home link **333**; 2) a challenges link **336** that displays a search feature **339** that uses a search criteria **342** to retrieve user information that is stored on the interactive portal; 3) a challenger link **345** that provides a challenger information region **348**, a challenger picture region **351**, and a content upload region **353**, that are used to establish the user accounts, or "challenger accounts", for the users of the interactive portal; 4) and a challenger home link **355** that displays a features region **358** that is accessible to those users of the interactive portal with a challenger account. Features region **358** includes a file structure region **361** that displays file folders **364** that correspond to one or more features of the challenger account in a hierarchical order, an icon region **367** that displays selectable icons **370** that correspond to one or more of the features of the challenger account, and a display region **373** that acts as the display for these features in response to either the file folders **361** and/or selectable icons **370**.

Navigation links **330** also include 5) a winners club link **373** that displays a category region **376** with categories **379** and a winners region **382** with winning content **385** that is selected from among the shared content in particular ones of categories **379** in accordance with a competitive format (not shown), as well as 6) a video off link **388** that displays regional competition region **391** with regions **394**A-D, and overall competition area **397** that includes regional content **397**, e.g. **397** A-D from each of regions **394**A-D. Details of the features of screens **303** of user interface **300**, will be discussed below, and in connection with the exemplary screens illustrated in the screen shots of FIGS. **5-12** below.

While navigation area **315** is shown having a particular arrangement of navigation links **330**, those skilled in the art will readily appreciate that other arrangements may be used to suit a particular user interface design. For example, the types of links that are suited for use in embodiments of user interface **300** may include, but are not limited to, a link that permits the user to search for content on the interactive portal or on the WWW; a link that permits the user to purchase merchandise, e.g., clothing, digital video disks (DVD); a link that provides information and/or permits the user to communicate criticism, suggestions, questions, and general commentary about their experience on the interactive portal; a link that permits the user to explore business endeavors, e.g., advertisements, on the interactive portal; a link the provides the user with information about the rules, analysis and organization of the shared content, as well as many other links that are not detailed herein but that fall within the scope and spirit of the present invention.

With continued reference to FIG. **3**, screens that are used as screen **303** of user interface **300** are linked together so that the user can navigate from one screen to another. This enables users to move amongst the various screens using any suitable input device, e.g., a mouse, touch screen, etc. This can be achieved in a manner similar to the way Web sites are navigated on the World Wide Web (WWW). In one example, user

US 8,209,618 B2

13

interface **300** employs one or more uniform resource identifiers (URI), and the protocols, software, and rules that are associated with systems that use URI-type identifiers, to link the screens of user interface **300**.

Players that are used as multi-media player **318** are generally adaptable to audio, video, and image content. It may be desirable, for example, that players that are selected for player **318** are suited to handle each type of content, as well as the range of formats that is available for each type of content. For example, players that are suited for player **318** are adapted for a variety of video formats, including, but are not limited to, AIFF, WAV, XMF, 3gp, ASF, AVI, DVR-MS, MPEG, IFF, MKV MPEG-TS, MP4, MOV, OGG, OGM, RealMedia, as well as similar format that are used to electronically capture, store, and/or transmit video files. The players are also compatible with audio content formats that include, but are not limited to, MP3, WMA, WAV, OGG, MPC, FLAC, AIFF, RAW, AU, GSM, VOX, DCT, ACC, M4A, MP4, ATRAC, RA, RAM, DSS, MSV, DVF, as well as similar format that are used to electronically capture, store, and/or transmit audio files. Players for player **318** are also compatible with image formats including, but not limited to, JPEG, TIFF, RAW, PNG, GIF, BMP, PPM, PGM, PBM, PNM, SVG, SWF, PDF, encapsulated PostScript, Windows Metafile, and any other format that is used to electronically capture, store, and/or transmit image files. Although it may be desirable that the player selected for player **318** is compatible with every type and format of the multi-media content, alternative embodiments of user interface **300** may include more than one player that are selected, respectively, because they are adaptable to one or more of the types of content.

Typical category links that are used for category links **321**A-F are based on the characteristics of the content found in content list **324**. This content as it relates to shared content **327**. Exemplary characteristics include subject matter (or "genre"), length, and language, among others. But, this is not an exhaustive list. Rather other characteristics can be selected and assigned to shared content **327**, as desired. For purposes of the embodiment of user interface **300** of FIG. **3**, shared content **345** is organized in accordance with its genre. Examples of the genre that can be used in embodiments of the interactive portal include, but are not limited to, "short films," "comedy," "pesky pets," "garage bands," "family video," and "agony of defeat." It is contemplated, however, that the genre is amenable to other descriptive indicators of the subject matter. Such indicators may be selected by the interactive portal, i.e., by the administrators or designers of the interactive portals. Or, the users of the portal may create their own genre, as desired.

Content list **324** may be instantiated in a number of ways. One exemplary content list for content list **324** is a list of shared content **327**. Another is displayed as one or more images taken that are part of, or taken from, shared content **327** (e.g., "thumbnails"). Each of these can be readily implemented by those having ordinary skill in the art. In one example, shared content **327** that is uploaded to the interactive portal is assigned a genre. This may occur automatically, or, alternatively, it may require that the user input or select the proper information that corresponds to the genre of their uploaded content.

Once the genre is assigned to the shared content, it may be found in content list **324** under category link **321** that corresponds to that genre. Thus, a music video that features a rock band would be assigned to the genre "garage bands." When a user selects a particular one of category links **321** in challenge area **312**, e.g., by "pointing and clicking on it," user interface **300** may display on screen **303** the content list with shared

14

content that is assigned to that genre, if any, associated with that category link. Then, the user can select from the resultant list a particular one of the shared content for viewing.

It would be customary, though not imperative, that the screen associated with home link **333** in navigation links **330** is the primary screen, i.e., the "home page," of embodiments of the interactive portal. As discussed in connection with FIG. **5** below, home link **333** is typically associated with the first Web page presented to a user of the interactive portal. In accordance with embodiments of the present invention, the home link **333** is the portion of the interactive portal that provides the user with general content, advertisements, links, and other information that has to do with the interactive portal.

Users that want to search for other users on the interactive portal may enter search criteria **342**, via an input device (e.g., a keyboard), into search feature **339**. Search criteria that search criteria **342** of challenges link **336** can be include, but are not limited to, name, age, e-mail address, account id, country, state, zip code, age, and gender, among others. Use of the search criteria in search feature **339** to retrieve information will be generally understood by those having ordinary skill in the art. Search feature may utilize, for example, algorithms that are configured interact with the portions of the interactive portal e.g databases **194**, **197** (FIG. **1**), where the relevant information is stored to retrieve that information that corresponds to the particular search criteria.

Challenger information region **348**, a challenger picture region **351**, and content upload region **353** that are used to set up the challenger accounts is each configured to receive data, e.g., from an input device. This data includes, but is not limited to, text, images, video, and audio, among others. In one embodiment of the interactive portal **194** and **197**, the information is stored on the interactive portal, i.e., in databases discussed in connection with FIG. **1** above.

As illustrated in FIG. **3**, challenger information region **348** may be configured for information about the user, e.g., e-mail address, passwords, address (e.g., country, state, zip code), gender, birth data, first name, last name, school, work, other general data and commentary about the user, and the like. Challenger picture region **351** and content upload region **353** are configured to permit the user to upload, save, and/or store their shared content (e.g., images, video, and audio) in one or more of the formats discussed above.

File folders **364** and selectable icons **370** of features region **358** typically correspond to applications that are available to users that have challenger accounts. For example, some of the file folders and/or selectable icons found in the features region typically correspond to applications that permit the user to communicate (and manage communications) with other users of the interactive portals that have challenger accounts. This may be done via email, instant message, text message, and similar types of electronic messaging applications. The file folders and/or selectable icons may also correspond to applications that have planning and other functionality, like calendars, datebooks, journals, and other similar type of applications that are suited to maintain chronological order of important events, dates, and other information in daily, weekly, and/or annual order, as desired. Still other options that may be available in the feature region may include applications that permit the user to modify certain aspects of their challenger account. These aspects may include, for example, personal information, server and folder information, login information, message composition, message viewing, message location, message filters, as well as other display options and applications. Suitable applications that are used in the features region include, but are not limited

US 8,209,618 B2

15                                                                16

to, e-mail, address book, notes, calendar, and account man-agement applications. It is contemplated that a user can select from among the file folders **364** and/or selectable icons **370** with an input device, e.g., by "pointing and clicking on it." When the user selects one of these features, it causes display region **373** to display menu choices, options, and other selec-tions that the user can navigate to further implement the chosen application, e.g., by "pointing and clicking on them." An example of some of these options will be discussed in FIGS. **7-8** below.

A feature of some embodiments of the interactive portals discussed herein is the way the portal organizes particular ones of the shared content. In the present example, winning content **385** that is found in winners region **382** is identified using a number of competitive analysis methods. Generally, the analysis methods that are used by the interactive portal include algorithms, software, and other automatedly-imple-mented methods. These are configured to identify particular ones of the shared content from among other ones of the shared content based on feedback provided by the users of the interactive portal. In many embodiments, the shared content is from the same genre. Feedback that is suited for use in the analysis methods can take many different forms. Examples include, but are not limited to, points, scores, commentary, votes, ratings, letter grades, total number of views, and any combination thereof. In one exemplary embodiment of the present invention, a plurality of multi-media content is eli-gible for a particular level of competitive analysis. In such an example, users of the interactive portal may choose which of plurality of multi-media content is most enjoyable and/or deserving of winning a competition. When a user chooses which multi-media content should win, the user designates a "point" to that multi-media content.

Where the user rating system is based on "points," as exem-plified above, then the analysis method to identify the win-ning content from among two or more shared content of the same genre determines which of the shared content received the highest cumulative point total for a predetermined period time. Exemplary time periods include, daily, weekly, monthly, annually, bi-monthly, bi-annually, or the like. An example of a method for identifying shared content is dis-cussed in more detail in connection with FIG. **4** below.

Regional content **397**A-D in overall competition area **397** that is displayed via video off link **388** is also selected in accordance with the competitive formats discussed above, and in more detail below. To provide one or more of the regional content however, the analysis method may compare shared content from different genre. For example, the regional content that is found in overall competition area **397** can be selected by comparing the cumulative point totals of the winning content for each genre over a given period of time. Then, an overall winner (not shown) is selected from among the regional content that is found in overall competi-tion area **397**. Thus, it is possible that the overall winner is selected from among regional content that are all from differ-ent genre.

FIG. **4** illustrates an example of a method **400** that is used to organize the shared content of the interactive portal in accordance with concepts of the present invention. Method **400** includes, at step **405**, selecting a time period for gathering data. Then, at step **410**, method **400** includes gathering feed-back from the users on the shared content. This includes, for example, gathering points, votes, and other indicators that users select via the user interface after they view particular ones of the shared content. Next, at step **415**, method **400** includes determining whether the time period has been met. If it is, then the method moves to step **420**, where method **400**

includes analyzing the feedback to identify which of the shared content received the highest cumulative point total.

The steps of method **400** can be applied, in whole, or, in part, to analyze the feedback that users provide for particular ones of the shared content. In a one embodiment of the inter-active portal, examples of method **400** are applied in a manner that identifies the winning content that is found in the winners region, as discussed above. It can also be used to determine the overall winner from among the regional winners, as well as, for the purpose of identifying a particular one of the shared content from other shared content that is found on the inter-active portal. In accordance with embodiments of the present invention, any competitive format is contemplated within embodiments of the present invention. For example, head-to-head, bracket, open popularity forum, and the like, are suit-able competitive formats for embodiments of the present invention.

It is noted that the processing and decision block that are illustrated in FIG. **4** represent steps performed by functionally equivalent circuits such as a digital signal processor circuit or an application specific integrated circuit (ASIC). The flow diagram does not depict the syntax of any particular program-ming language. Rather, the flow diagram illustrates the func-tional information one having ordinary skill in the art requires to fabricate circuits or to generate computer software to per-form the processing required of the particular machine. It should also be note that many routine program elements, such as initialization of loops and variables and the use of tempo-rary variables are not shown. The particular sequence of steps described is illustrative only and can be varied without depart-ing from the scope, spirit, and concepts of the present disclo-sure.

Generally speaking, the time period that is selected iden-tifies the period during which the interactive portal will con-sider the feedback that the users of the interactive portal provide in connection with the shared content. It may be based on a time increment, e.g., minutes, hours, days, etc. While the actual value of the time increment can be selected at random, it may be desirable that the time increment is selected based on the desired length of a contest, or other event, that is used to grant rewards to the users that uploaded the winning content or the overall winner.

The algorithms used to gather the feedback from the users will be generally recognized in the art. They may respond to actions from the users. In one example, the algorithm may register the numerical value or the other indicator that is assigned to the users' selection, e.g., "by pointing and click-ing on a menu item."

Similarly the instructions that are used to analyze the feed-back may operate on the registered values in order to orga-nize, and/or to identify, particular ones of the shared content and their corresponding user. Such instructions will often operate in a manner that access the various user information that may be saved in the databases of the computer network.

Referring to FIGS. **5-12**, these figures are used hereinbe-low to illustrate various features of the user interface that are available on some exemplary embodiments of the interactive portal. Generally, the screens illustrated by the screen shots of FIGS. **5-12** are examples only, and, for purposes of the descriptions that follow below, illustrate examples of user interface **500**, **600**, **700**, of the interactive portal in accordance with embodiments of the present invention. Such interactive portals may run on any suitable machine, e.g., a computing device (such as computer system **121** of FIG. **1**.) As discussed in more detail below, user interface **500**, **600**, **700**, include interactive features that greatly simplify the actions the user must take in navigating the content of the interactive portal.

US 8,209,618 B2

17                                                    18

With continued reference to FIG. **5**, the screen shot of user interface **500** includes a screen **503** that has an interactive area **506** that is configured to display a multi-media area **509**, a challenge area **512**, and/or a navigation area **515**. While interactive area **506**, and user interface **500** in general, is shown having particular arrangement of areas **509**, **512**, and **515**, those skilled in the art will readily appreciate that other arrangements may be used to suit a particular user interface design. Using the layout of interactive area **506** shown, when the user wishes to view other screens of the interactive portal, they may select one or more of the links that are found in interactive area **410** so as to be transported (electronically) to one or more different screens, such as the screens discussed in FIGS. **6-12** below.

Assuming, for this illustration only, that interactive area **506** of user interface **500** of FIG. **5** is the home page and displays only content of the interactive portal that is of a general nature, then the user can select from amongst the links that are found in areas **509**, **512**, and **515**, to explore other areas of the interactive portal. The user, for example, may select one of the links from challenge area **512** and from navigation area, e.g., "by pointing and clicking on it."

FIG. **6** illustrates a screen shot of an example of user interface **600** that permits users to enter data, e.g., personal data, content data, etc. User interface **600** may be associated with the challenger link, discussed above. It may be desirable that this information is stored on one of the databases use on the computer network. In the present example, user interface **600** can enter descriptive data (e.g., e-mail address, country, state, zip code, gender, etc.) in the challenge information region and to upload shared content to the interactive portal in the content upload region. Some screens that are used for user interface **600** may also include a video search feature, as well as a multi-media player that is used to view shared content on the interactive portal.

FIGS. **7-8** illustrate screen shots of an example of user interface **700**, **800** that allows the user to view and manage the various applications that may be available via their challenger account. The screens of user interface **700**, **800** may be linked to the challenger home link, discussed above, as well as to each other. When the user wishes to activate one of the applications, they can select a file folder from the file folder region or, alternatively, from amongst the selectable icons in the icon region, e.g., by "pointing and clicking on it." Then, the features of the application that correspond to the file folder and/or selectable icon will be displayed in the display region. In the example of user interface **700** that is illustrated in FIG. **7**, the features of the "inbox" application are seen. Similarly, in the example of user interface **800** that is illustrated in FIG. **8**, the features of the "options" for the email application are seen.

FIG. **9** illustrates a screen shot of an example of user interface **900** that permits the user to search for other users, shared content, and other information. This screen often corresponds to the challenger link, described above. In the screen shown in FIG. **9**, the user can enter one or more search criteria, e.g., name, challenger and/or user id, country, state, zip code, age, gender, e-mail address, and other criteria that is associated with the information and data stored by the interactive portal. The user can then activate the search by selecting the "search" icon, e.g., by "pointing and clicking on it."

FIG. **10** illustrates a screen shot of an example of user interface **1000** that permits the user to view (or hear) particular ones of the shared content. It also allows the users to provide feedback about the shared content. In the present example, the user can add comments, thoughts, and messages about the shared content. Some embodiments of the interac-

tive portal may transmit this commentary to the user associated with the shared content via email, text message, or in a manner that is consistent with the concepts discussed herein. The user can also provide feedback by selecting the rating they feel is appropriate. In the present illustration of user interface **1000**, the ratings that can be applied to the shared content include, from the lowest value to the highest value, "sorry try again," "rookie," "not too shabby," "worthy," and "challenger." It is noted that although the ratings that are seen on the screen of FIG. **10** are textual, they can be used in the competitive analysis methods that are contemplated by the disclosure herein. For instance, each of the ratings that are found in user interface **1000** may be assigned numerical values that are then utilized by the analysis methods. Alternatively, it is further contemplated that ones of the competitive methods may be constructed (e.g., via machine-executable instructions, software) so as to be able to utilize the textual message.

FIG. **11** illustrates a screen shot of an example of user interface **1100** that provides the user with a list of the categories (e.g., genre) of the shared content that is available on the interactive portal. This screen typically corresponds to the challenges link, discussed above. Further, in certain implementations of the interactive portals described herein, these categories will correspond to the subject matter of the shared content, as described above. As can be seen in FIG. **11**, the list may include images, or "thumbnails," that relate to particular ones of the shared content that is associated with that category. Or, in alternative embodiments of the interactive portal, the list may simply show a list of the categories that have shared content available for the user. Of course, the actual appearance of the categories is flexible, in that, the screen that is used for user interface **1100** can present the categories in a manner that is suitable for the user to select from among the available categories of the shared content.

FIG. **12** illustrates a screenshot of an example of user interface **1200** that displays particular ones of the shared content that is selected in accordance with the competitive analysis methods that are discussed above. This screen is often associated with the winners club link, described in detail below. In the present example, the winning content that is found in the winners region are organized so as to display monthly winners that correspond to the various categories of the shared content. Similarly, FIG. **13** illustrates a screenshot of an example of user interface **1300** that displays particular ones of the shared content that are also selected in accordance with the competitive analysis methods that are discussed above. In this example of user interface **1300**, it is seen that the overall winners region is organized to display the regional content, as desired.

In view of the foregoing discussion of the winners region and the overall winners region, it is noted that various embodiments of the interactive portal may use a variety of schemes, monikers, and other identifies to elaborate on the contest that may be administered via the interactive portal. For example, winning content that is identified over a given time period can also be paired against each other to identify which of the regional content has received the most favorable feedback (e.g., the highest cumulative point total). Consider, for instance, a first video in category A received 100 points in a given monthly time period, and a second video in category B received 150 points during the same monthly time period. In context of the winning content that is displayed via, e.g., the winners club link, the first video and the second video may both appear as winning content in the winners region. However, for purposes of the regional content that is displayed via,

US 8,209,618 B2

19

e.g., the video off link, the second video will be identified when compared to the first video.

While the foregoing is directed to embodiments of the present invention, other and further embodiments of the invention may be devised without departing from the basic scope thereof.

What is claimed is:

**1**. A method for sharing multi-media content among a plurality of users in a computer network consisting essentially of:

creating a plurality of user accounts, each of the user accounts corresponding to one of the plurality of users, and having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network;

forming a user network including one or more of the plurality of user accounts in communication with one or more other user accounts and to the uploaded multi-media content via the computer network;

categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content;

organizing the uploaded multi-media content in a competitive format; and

establishing a hierarchy for the uploaded multi-media content within the competitive format by implementing a competitive measurement system;

wherein the competitive measurement system consists of:

enabling each user to designate a single point to one of a plurality of multi-media content for each one of a plurality of competitive rounds; and

ranking a position in the hierarchy for the uploaded multi-media content based on a summation of points.

**2**. The method of claim **1**, further comprising providing a user interface for the users to access the user accounts within the user network, the user interface including a first interactive area for selecting from the uploaded multi-media content and a second interactive area for viewing the selected multi-media content.

**3**. The method of claim **2**, wherein the user interface includes a third interactive area for displaying one or more product advertisements.

**4**. The method of claim **1**, wherein the users access the user network using one or more computing devices selected from a computer, a mobile phone, a personal data assistant (PDA), and a television.

**5**. A method of facilitating an online contest within a computer network consisting essentially of:

20

creating a plurality of user accounts, each of the user accounts corresponding to one of the plurality of users, and having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network;

providing a user interface for the users to access the first interactive feature, the user interface including an embedded multi-media player adapted for viewing the uploaded multi-media content;

categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content;

organizing the uploaded multi-media content in a competitive format having a plurality of competitive rounds based on the quantity of multi-media content being organized; and

applying a competitive measurement system to advance particular uploaded multimedia through the plurality of competitive rounds, the competitive measurement system consisting of:

enabling each user to designate a single point to one of a plurality of multi-media content for each one of a plurality of competitive rounds; and

ranking a position in the hierarchy for the uploaded multi-media content based on a summation of points.

**6**. The method of claim **5**, wherein the embedded multi-media player includes a video viewer, an audio player, and a picture viewer.

**7**. The method of claim **5**, wherein the embedded multi-media player includes one or more interactive portals that has a first portal that permits a first user to communicate with others of the users on the user network.

**8**. The method of claim **7**, wherein the first portal transmits electronic messages.

**9**. The method of claim **8**, wherein the embedded multi-media player includes one or more interactive portals selected from a second portal that permits the first user to purchase one or more items, a third portal that permits the first user to transfer the uploaded multi-media content to a computing device, and a fourth portal that permits the first user to navigate within the user network.

**10**. The method of claim **5**, wherein the users access the user network using one or more computing devices selected from a computer, a mobile phone, a personal data assistant (PDA), and a television.

*     *     *     *     *

**Claim 1 Chart – U.S. Patent 8,209,618**

| Claim 1 | http://www.bytephoto.com/ [1] |
|---|---|
| A method for sharing multi-media content among a plurality of users in a computer network consisting essentially of: | Bytephoto.com shares digital photos among a plurality of users in a computer network. (http://www.bytephoto.com/photopost/uploadphoto.php [2]) |
| creating a plurality of user accounts, | Bytephoto.com allows a plurality of users to create user accounts. [2] |
| each of the user accounts corresponding to one of the plurality of users, and | Each Bytephoto.com account corresponds to a one of the plurality of users. [2] |
| having a plurality of interactive features including a first feature that permits the user to upload the multi-media content to the computer network; | Bytephoto.com users can upload media content, such as digital photos. (http://www.bytephoto.com/content.php?r=122-Contest-Rules [3]) |
| forming a user network including | Bytephoto.com forms a user network. (http://www.bytephoto.com/content.php?r=117-photo-contests [4]) |
| one or more of the plurality of user accounts in communication with one or more user accounts and to the uploaded mulit-media content via the computer network; | One or more of the plurality of Bytephoto.com user accounts are in communication with one or more Bytephoto.com user accounts [2, 3, 4] and the Bytephoto.com uploaded multi-media content via a computer network [2, 3, 4]. |
| categorizing the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content; | Bytephoto.com categorizes the uploaded multi-media content in accordance with the subject matter of the uploaded multi-media content. [4] |
| organizing the uploaded multi-media content in a competitive format; and | Bytephoto.com organizes the uploaded multi-media content in a competitive format. [2, 3, 4] |
| establishing a hierarchy for the uploaded multi-media content within the competitive format by implementing a competitive measurement system; | Bytephoto.com establishes a hierarchy for the uploaded multi-media content within the competitive format by implementing a competitive measurement system. [2, 3, 4] |

| wherein the competitive measurement system consists of: | |
|---|---|
| enabling each user to designate a single point to one of a plurality of multi-media content for each one of a plurality of competitive rounds; and ranking a position in the hierarchy for the uploaded multi-media content based on a summation of points. | Bytephoto.com enables each Bytephoto.com user to designate a single point to one of a plurality of multi-media content for each one of a plurality of competitive rounds (http://www.bytephoto.com/content.php?r=171-Categories-Voting-Selection [5]); and Bytephoto.com ranks a position in the hierarchy for the uploaded multi-media content based on a summation of points [1, 2, 3, 4, 5]. |

EXHIBIT B

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | 2365-3 | 3262 |

13828        7590        06/19/2015
McCarter & English, LLP / East Brunswick
Two Tower Center Boulevard, 24th Floor
East Brunswick, NJ 08816

| EXAMINER |
|---|
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/19/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patents@sorinrand.com
docket@mccarter.com

PTOL-90A (Rev. 04/07)

| **Office Action Summary** | Application No.<br>13/531,615 | | Applicant(s)<br>GAROFALO, MICHAEL | |
|---|---|---|---|---|
| | Examiner<br>RUAY HO | | Art Unit<br>2175 | AIA (First Inventor to File)<br>Status<br>No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>06/25/2012</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1-13</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-13</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on <u>06/25/2012</u> is/are: a)☒ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

    a)☐ All   b)☐ Some**  c)☐ None of the:

    1.☐ Certified copies of the priority documents have been received.

    2.☐ Certified copies of the priority documents have been received in Application No. _____.

    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
    Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date. _____ .

4)☐ Other: _____.

Application/Control Number: 13/531,615                                    Page 2
Art Unit: 2175

1.      The present application is being examined under the pre-AIA first to invent

provisions.


**DETAILED ACTION**

2.      According to paper filed June 25, 2012, claims 1-13 are pending for examination

with a priority date of June 26, 2008.


***Double Patenting***

3.      The nonstatutory double patenting rejection is based on a judicially created

doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the

unjustified or improper timewise extension of the "right to exclude" granted by a patent

and to prevent possible harassment by multiple assignees.  A nonstatutory double

patenting rejection is appropriate where the claims at issue are not identical, but at least

one examined application claim is not patentably distinct from the reference claim(s)

because the examined application claim is either anticipated by, or would have been

obvious over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d

1226 (Fed. Cir. 1998); *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir.

1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*,

686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619

(CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

        A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d)

may be used to overcome an actual or provisional rejection based on a nonstatutory

Application/Control Number: 13/531,615                                          Page 3
Art Unit: 2175

double patenting ground provided the reference application or patent either is shown to

be commonly owned with this application, or claims an invention made as a result of

activities undertaken within the scope of a joint research agreement. A terminal

disclaimer must be signed in compliance with 37 CFR 1.321(b).


        The USPTO internet Web site contains terminal disclaimer forms which may be

used.  Please visit http://www.uspto.gov/forms/.  The filing date of the application will

determine what form should be used.  A web-based eTerminal Disclaimer may be filled

out completely online using web-screens. An eTerminal Disclaimer that meets all

requirements is auto-processed and approved immediately upon submission.  For more

information about eTerminal Disclaimers, refer to

http://www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.


4.      Claims 1-13 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-10 of U.S. Patent No. 8,209,618. Although the claims at

issue are not identical, they are not patentably distinct from each other because they

recite similar features.


                              ***Allowable Subject Matter***

5.      Claims 1-13 are allowable over prior art.

Application/Control Number: 13/531,615                                        Page 4
Art Unit: 2175

*Conclusion*

6.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure.


7.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to RUAY HO whose telephone number is (571) 272-6088.

The examiner can normally be reached on Monday-Friday (9 AM - 5 PM EST).

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, William Bashore can be reached on (571) 272-4088.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov.

        Should you have questions on access to the Private PAIR system, contact the

Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like

assistance from a USPTO Customer Service Representative or access to the

automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-

1000.

/RUAY HO/
Primary Examiner, Art Unit 2175

EXHIBIT C



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 13828 | 7590 | 09/21/2015 |

McCarter & English, LLP / East Brunswick
Two Tower Center Boulevard, 24th Floor
East Brunswick, NJ 08816

| EXAMINER |
|---|
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

DATE MAILED: 09/21/2015

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | 2365-3 | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/21/2015 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>   SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**      Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**  (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

13828       7590       09/21/2015
McCarter & English, LLP / East Brunswick
Two Tower Center Boulevard, 24th Floor
East Brunswick, NJ 08816

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | 2365-3 | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/21/2015 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HO, RUAY L | 2175 | 715-753000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE          (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.       OMB 0651-0033       U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | 2365-3 | 3262 |

13828       7590       09/21/2015
McCarter & English, LLP / East Brunswick
Two Tower Center Boulevard, 24th Floor
East Brunswick, NJ 08816

| EXAMINER |
|---|
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

DATE MAILED: 09/21/2015

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 13/531,615 | Applicant(s) GAROFALO, MICHAEL | |
|---|---|---|---|
| | Examiner RUAY HO | Art Unit 2175 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>08/21/2015 Electronic Terminal Disclaimer</u>.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>1-13</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u> .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All   b) ☐ Some   *c) ☐ None of the:

   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/RUAY HO/
Primary Examiner, Art Unit 2175

EXHIBIT D



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 530        7590        01/14/2016 | | EXAMINER |
| LERNER, DAVID, LITTENBERG, | | HO, RUAY L |
| KRUMHOLZ & MENTLIK | | |
| 600 SOUTH AVENUE WEST | ART UNIT | PAPER NUMBER |
| WESTFIELD, NJ 07090 | 2175 | |

DATE MAILED: 01/14/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 04/14/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or <u>Fax</u>  (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

530        7590        01/14/2016
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 04/14/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HO, RUAY L | 2175 | 715-753000 |

**1.** Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2.** For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

**3.** ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11.  Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :  ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

**4a.** The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b.** Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

530        7590        01/14/2016
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

DATE MAILED: 01/14/2016

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

### OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

### Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) |
| --- | --- | --- |
| | 13/531,615 | GAROFALO, MICHAEL |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | RUAY HO | 2175 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to _12/21/2015 IDS_.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are _1-13_. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov .

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

       a) ☐ All   b) ☐ Some  *c) ☐ None of the:

         1. ☐ Certified copies of the priority documents have been received.

         2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

         3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

       ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

       **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _12/21/2015_
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/RUAY HO/
Primary Examiner, Art Unit 2175

EXHIBIT E

Doc code: RCE.EFS                                                                                            PTO/SB/30EFS (07-14)
Doc description: Request for Continued Examination (RCE)                        Approved for use through 07/31/2016. OMB 0651-0031
                                                                              U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 13531615 | Filing Date | 2012-06-25 | Docket Number (if applicable) | GARFUM 3.0-001 CON | Art Unit | 2175 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Michael Garofalo | | | Examiner Name | R. L. Ho | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, to any international application that does not comply with the requirements of 35 U.S.C. 371, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV.

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☐ Amendment/Reply

    ☒ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a  period of months
(Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required) _____

☐ Other _____

## FEES

☒ **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No    | 12-1095 |

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| ☒ Patent Practitioner Signature |
| Applicant Signature |

Doc code: RCE.X
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-14)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Andrew T. Lane/ | Date (YYYY-MM-DD) | 2016-02-10 |
| Name | Andrew T. Lane | Registration Number | 63634 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| Application No. (if known): 13/531,615 | Attorney Docket No.:  GARFUM 3.0-001 CON |

# Certificate of Electronic Filing Under 37 C.F.R. § 1.8

I hereby certify that this correspondence is being transmitted via the Office electronic filing system in accordance with 37 C.F.R. § 1.6(a)(4):

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

on        February 10, 2016        .
                Date

/Andrew T. Lane/
Signature

Andrew T. Lane
Typed or printed name of person signing Certificate

63,634                                (908) 518-6354
Registration Number, if applicable          Telephone Number

Note:    Each paper must have its own certificate of mailing, or this certificate must identify each submitted paper.

Request for Continued Examination (Fillable PDF)

4401827

EXHIBIT F

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (03-15)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 13531615 |
| | Filing Date | 2012-06-25 |
| | First Named Inventor | Michael Garofalo |
| | Art Unit | 2175 |
| | Examiner Name | R. L. Ho |
| | Attorney Docket Number | GARFUM 3.0-001 CON |

## U.S.PATENTS    Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Patent citation information please click the Add button.    Add

## U.S.PATENT APPLICATION PUBLICATIONS    Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    Add

## FOREIGN PATENT DOCUMENTS    Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | |

If you wish to add additional Foreign Patent Document citation information please click the Add button    Add

## NON-PATENT LITERATURE DOCUMENTS    Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 13531615 |
|---|---|---|
| | Filing Date | 2012-06-25 |
| | First Named Inventor | Michael Garofalo |
| | Art Unit | 2175 |
| | Examiner Name | R. L. Ho |
| | Attorney Docket Number | GARFUM 3.0-001 CON |

| | | | |
|---|---|---|---|
| | 1 | Brief in Support of Defendant's Motion for Attorney's Fees, Garfum.com Corporation vs. Reflections by Ruth D/B/A Bytephoto.com, Case No. 1:14-cv-05919, filed 06-22-15, 13 portion of brief provided relating to validity of U.S. Patent 8,209,618. | |
| | 2 | Brief in Support of Defendant's Motion to Dismiss Plaintiff's Complaint for Patent Infringement, Garfum.com Corporation vs. Reflections by Ruth D/B/A Bytephoto.com, Case No. 1:14-cv-0519-JEI-KMW, filed 02-13-2015, 24 pages. | |
| | 3 | Document Identifying litigation relating to U.S. Patent 8,209,618 in U.S. District Court, Civil Docket for Case # 1:14-cv-05919, Garfum.com Corporation vs. Reflections by Ruth, date filed: 09-23-2014. | |
| | 4 | Document Identifying litigation relating to U.S. Patent 8,209,618 in U.S. District Court, Civil Docket for Case # 3:14-cv-05921, Garfum.com Corporation vs. Ourstage, Inc., date filed: 09-23-2014. | |
| | 5 | Document Identifying litigation relating to U.S. Patent 8,209,618 in U.S. District Court, Civil Docket for Case # 3:14-cv-05922, Garfum.com Corporation vs. Skinnycorp, LLC, date filed: 09-23-2014. | |
| | 6 | Document Identifying litigation relating to U.S. Patent 8,209,618 in U.S. District Court, Civil Docket for Case # 3:14-cv-05923, Garfum.com Corporation vs. Golozo, LLC, date filed: 09-23-2014. | |
| | 7 | Plaintiff's Opposition to Defendant's Motion for Fees, Garfum.com Corporation vs. Reflections by Ruth D/B/A Bytephoto.com, Civil Action No. 1:14-cv-05919, filed 07-27-15, 26 pages. | |
| | 8 | Reply Brief in Support of Defendant's Motion for Attorney's fees, Garfum.com Corporation vs. Reflections by Ruth D/B/A Bytephoto.com, Case No. 1:14-cv-05919, filed 08-03-15, 19 pages. | |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 13531615 |
| --- | --- | --- |
| | Filing Date | 2012-06-25 |
| | First Named Inventor | Michael Garofalo |
| | Art Unit | 2175 |
| | Examiner Name | R. L. Ho |
| | Attorney Docket Number | GARFUM 3.0-001 CON |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

✕ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Andrew T. Lane/ | Date (YYYY-MM-DD) | 2016-02-10 |
| --- | --- | --- | --- |
| Name/Print | Andrew T. Lane | Registration Number | 63634 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being transmitted via the Office electronic filing system in accordance with 37 CFR § 1.6(a)(4).

Dated: February 10, 2016
Electronic Signature for Andrew T. Lane:   /Andrew T. Lane/

Docket No. GARFUM 3.0-001 CON
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Michael Garofalo

Application No.: 13/531,615                     Confirmation No.: 3262

Filed: June 25, 2012                           Art Unit: 2175

For:  METHOD OF SHARING MULTI-MEDIA            Examiner: R. L. Ho
      CONTENT AMONG USERS IN A GLOBAL
      COMPUTER NETWORK

MS RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

## INFORMATION DISCLOSURE STATEMENT

Dear Sir:

It is respectfully requested that the reference(s) listed on the enclosed form be made of record and considered with respect to the above-referenced U.S. patent application. A copy of each reference which is not a U.S. patent or patent application is enclosed. Submission of the present Information Disclosure Statement should not be taken as an admission that the cited reference(s) is/are legally available prior art or that the same is/are pertinent or material.

All required fees are being paid via credit card.  However, please charge any additional fees not already paid via credit card, and credit any overpayments to our Deposit Account No. 12-1095.

Dated:  February 10, 2016                     Respectfully submitted,

                                              Electronic signature:  /Andrew T. Lane/
                                              Andrew T. Lane
                                              Registration No.: 63,634
                                              LERNER, DAVID, LITTENBERG, KRUMHOLZ &
                                                  MENTLIK, LLP
                                              600 South Avenue West
                                              Westfield, New Jersey  07090
                                              (908) 654-5000
                                              Attorney for Applicant(s)

LD-458\

4401700

EXHIBIT G



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

530          7590          03/18/2016
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
| --- |
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 2175 | |

DATE MAILED: 03/18/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 06/20/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.  THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

530         7590         03/18/2016
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

TITLE OF INVENTION: METHOD OF SHARING MULTI-MEDIA CONTENT AMONG USERS IN A GLOBAL COMPUTER NETWORK

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 06/20/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HO, RUAY L | 2175 | 715-753000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

**4a. The following fee(s) are submitted:**
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.         OMB 0651-0033         U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/531,615 | 06/25/2012 | MICHAEL GAROFALO | GARFUM 3.0-001 CON | 3262 |

530        7590        03/18/2016
LERNER, DAVID, LITTENBERG,
KRUMHOLZ & MENTLIK
600 SOUTH AVENUE WEST
WESTFIELD, NJ 07090

| EXAMINER |
|---|
| HO, RUAY L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2175 | |

DATE MAILED: 03/18/2016

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. | Applicant(s) |
| --- | --- | --- |
| | 13/531,615 | GAROFALO, MICHAEL |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | RUAY HO | 2175 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to <u>02/10/2016 Information Disclosure Statement</u>.
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are <u>1-13</u>. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see <u>http://www.uspto.gov/patents/init_events/pph/index.jsp</u> or send an inquiry to <u>PPHfeedback@uspto.gov</u>.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   - a) ☐ All   b) ☐ Some   *c) ☐ None of the:
     1. ☐ Certified copies of the priority documents have been received.
     2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
     3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date_____.
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date <u>02/10/2016</u>
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/RUAY HO/
Primary Examiner, Art Unit 2175

EXHIBIT H



Benton Patterson <benton@thetexaslawoffice.com>

## Garfum dismissal of counterclaims
5 messages

**Benton Patterson** <benton@thetexaslawoffice.com>          Fri, Apr 10, 2015 at 12:05 PM
To: Austin Hansley <austin@thetexaslawoffice.com>
Cc: Brandon LaPray <brandon@thetexaslawoffice.com>

Here is the Supreme Court case and a brief article about what we discussed for Garfum.  The basic strategy is to issue a unilateral covenant not to sue that is irrevocable and worded broadly to prevent any future claims by Garfum.  Garfum would then file a motion to dismiss its own claims with prejudice and to dismiss Reflections claims without prejudice on the basis that the court lacks subject matter jurisidiction because the covenant moots the counterclaims.

http://www.flhlaw.com/Covenant-Not-to-Sue/

--
Benton Patterson
**AUSTIN HANSLEY P.L.L.C.**
5050 Quorum Dr. Suite 700
Dallas, Texas 75254
Telephone: (469) 587-9776
Facsimile: (855) 347-6329
Email: Benton@TheTexasLawOffice.com
www.TheTexasLawOffice.com

📄 **already v. nike.pdf**
134K

