IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARFUM.COM CORPORATION, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action No. 14-5919 (JBS/KMW) |
| REFLECTIONS BY RUTH D/B/A BYTEPHOTO.COM, | **OPINION** |
| Defendant. | |

APPEARANCES:

Lawrence C. Hersh, Esq.
17 Sylvan Street, Suite 102B
Rutherford, NJ 07070
    and
Austin Hansley, Esq. (pro hac vice)
AUSTIN HANSLEY PLLC
5050 Quorum Drive, Suite 700
Dallas, Texas 75254
    Attorneys for Plaintiff

Frank L. Corrado, Esq.
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 Pacific Avenue
Wildwood, NJ 08620
    and
Joseph C. Gratz, Esq. (pro hac vice)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
    and
Daniel K. Nazer, Esq. (pro hac vice)
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
    Attorneys for Defendant

**SIMANDLE, Chief Judge:**

I.   Introduction

Present before the Court is Plaintiff Garfum.com
Corporation's (hereinafter, "Plaintiff") Motion for
Reconsideration of this Court's March 30, 2016 Opinion and Order
finding this case "exceptional" under 35 U.S.C. § 285 and
granting, in part, Defendant Reflections by Ruth d/b/a
Bytephoto.com's (hereinafter, "Defendant") Motion for Attorneys'
Fees. [Docket Item 56].  Plaintiff requests the Court to
reconsider its Opinion and Order in light of new evidence
indicating that the U.S. Patent and Trademark Office ("PTO")
allowed claims nearly identical to the ones at issue in this
case, as well as new caselaw regarding 35 U.S.C. § 101. (Pl.'s
Br. at 1.)  For the reasons set forth below, the Court grants
Plaintiff's motion for reconsideration and will not award
attorneys' fees or costs because the circumstances are not
"exceptional" under 35 U.S.C. § 285.

II.  Factual Background and Procedural History

A. March 2016 Opinion Granting Fees

The Court discussed the factual background of this case in
detail in Garfum.com Corp. v. Reflections by Ruth d/b/a
Bytephoto.com, No. 14-5919, 2016 WL 1242762, at *1-*2 (D.N.J.
Mar. 30, 2016).  Defendant had originally filed a motion to
dismiss Plaintiff's infringement action, alleging that the

claims of Plaintiff's '618 patent were directed towards unpatentable subject matter under 35 U.S.C. § 101 as explained by the Supreme Court in Alice Corp. Pty. Ltd. v. CLS Bank International, 134 S. Ct. 2347 (2014).[1] Id. at *4.  The day after this Court set a hearing on Defendant's motion to dismiss, Plaintiff executed a covenant not to sue and filed a motion to voluntarily dismiss the complaint and the counterclaims. Id. at *2.  The Court granted Plaintiff's motion to dismiss and closed the case, but Defendant then filed a motion for attorneys' fees under 35 U.S.C. § 285. Id.  In seeking fees, Defendant argued that (1) Plaintiff's arguments in defending against Defendant's motion to dismiss were meritless under § 101 and contrary to the

_____

[1] In Alice, the Supreme Court set out a two-step framework for distinguishing patents that claim so-called laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. Id. at 2355. Under step one, the Court determines whether "the claims at issue are directed one of those patent-ineligible concepts," and if so, the Court considers elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "'transform the nature of the claim' into a patent-eligible application." Id. (citation omitted).  Under step two, the court searches for an "inventive concept," i.e., an element or ordered combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (citation omitted).  In recent months, however, the Federal Circuit has reversed invalidations under Alice in a series of cases involving software patents. See, e.g., McRO, Inc. v. Bandai Namco Games Am. Inc., 837 F.3d 1299 (Fed Cir. 2016); BASCOM Global Internet Servs. v. AT&T Mobility LLC, 827 F.3d 1341 (Fed. Cir. 2016); Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016).  These new precedents are discussed in Part IV.A.I, below.

text of the patent, and (2) that Plaintiff's litigation conduct was unreasonable. Id. at *4.

The Court found the case to be "exceptional" under § 285 because (1) Plaintiff's case did not have substantive strength since it "should have been obvious" that its claims did not have an inventive concept in a post-Alice environment under 35 U.S.C. § 101, and (2) Plaintiff "propound[ed] unreasonable [litigation] positions in support of validity under § 101, and then dismiss[ed] the case to avoid a decision on the merits." Id. at *7, *9.  Notably, the Court dismissed Plaintiff's argument that the PTO's allowance of the '615 application – a continuation of the '618 patent, demonstrated that the case had substantive strength and was litigated reasonably. Id. at *9.  Plaintiff had obtained a Non-Final Office Action from the PTO regarding its '615 application on June 19, 2015, (see Am. Hansley Decl. ¶ 4), a first Notice of Allowance for the '615 Application on September 21, 2015 (Id. ¶ 5), and a Second Notice of Allowance for the '615 application on January 14, 2016. (Id. ¶ 6.) Because these notices of allowance occurred "well after the commencement of litigation and the briefing of the original motion to dismiss," the Court held that "without any mention of 35 U.S.C. ¶ 101 in the notice of allowance, this Court cannot" provide cover to Plaintiff's positions taken in litigation. 2016 WL 1242762, at *9.

As a result, the Court awarded fees to Defendants under §
285 in its discretion. Id.  However, the Court cabined the fee
award to work conducted on or after April 6, 2015, the date on
which Plaintiff opposed Defendant's motion to dismiss, to
reflect that Plaintiff's conduct was not "exceptional" from the
case's inception until that date. Id.  The Court reasoned that
"by the time this date was reached, the handwriting on the wall
for this sort of patent became clear under Alice and its
progeny, such that the decision of Plaintiff to nonetheless
continue the suit and force Defendant to incur more counsel fees
became exceptional under 35 U.S.C. § 285." Id.  The Court also
awarded Defendant one-half of the fees requested for the fee
motion itself. Id. at *10.

**B. Proceedings Before The PTO After the Fees Briefing**

On February 10, 2016, Plaintiff paid an additional $700 in
fees to reopen the prosecution of the '615 application and filed
a Second Request for Continued Examination and Information
Disclosure Statement, attaching all of the § 101 briefings filed
in this case. (Id. at ¶ 7-8.)  Plaintiff obtained a third Notice
of Allowance from the PTO on March 18, 2016, despite having been
provided with the § 101 briefing from the instant case. (Id. at
¶ 9.)

### III. Standard of Review

Local Civil Rule 7.1(i) governs the Court's review of the moving parties' motions for reconsideration, as it permits a party to seek reconsideration by the Court of matters which the party "believes the Judge or Magistrate Judge has overlooked when it ruled on the motion." L. Civ. R. 7.1(i).  The movant has the burden of demonstrating either "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Andreyko v. Sunrise Sr. Living, Inc., 993 F. Supp. 2d 475, 477-78 (D.N.J. 2014) (citations omitted); Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)(citations omitted)(same).  More specifically, the moving party must set forth the "'dispositive factual matters or controlling decisions of law'" it believes the Court overlooked when rendering its initial decision.  Mitchell v. Twp. of Willingboro Mun. Gov't, 913 F. Supp. 2d 62, 78 (D.N.J. 2012) (citation omitted).

In that way, a party seeking reconsideration must meet a high burden.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994); Maldonado v. Lucca, 636 F. Supp. 621, 629 (D.N.J. 1986).  Reconsideration does not provide "an opportunity for a second bite at the apple," Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998), nor a vehicle "to relitigate old

matters." NL Indus., Inc. v. Commercial Union Ins. Co., 935 F.
Supp. 513, 516 (D.N.J. 1996).  Indeed, mere disagreement with
the court's decision – particularly its reasoning and
distillation of the applicable law and facts – should be aired
through the appellate process.  See Andreyko, 993 F. Supp. 2d at
478; see also Shevline v. Phoenix Life Ins., No. 09-6323, 2015
WL 348552, at *1 (D.N.J. Jan. 23, 2015) (same).  But where new
evidence that was previously unavailable despite due diligence
may materially alter the factual landscape, or when subsequent
persuasive caselaw comes into existence, the court should
exercise its discretion to reexamine the decision pursuant to L.
Civ. R. 7.1(i).

## IV.  Discussion

     Plaintiff asks this Court to reconsider its March 30, 2016
Opinion and Order finding the case "exceptional" pursuant to 35
U.S.C. § 285 and granting, in part, Defendant's Motion for Fees
because new evidence from the PTO shows that the case does not
lack substantive strength, and that Plaintiff did in fact
litigate the case reasonably.  Defendant opposes the motion, as
it continues to argue that Plaintiff's case was, from the
outset, intended to use the cost of defense as leverage to
secure an undeserved settlement. (Opp'n at 3.)  It argues that
"[a]ll that has changed is that [Defendant] submitted some of

the Section 101 briefing from this case to the USPTO." (Opp'n at 9.)  Thus, Defendant maintains that "[t]he details of an ex parte proceeding in a different forum with different procedures and standards is of little relevance." (Opp'n at 10.)

As will be explained below, the Court will grant Plaintiff's motion for reconsideration under both the "evidence not previously available" and "preventing manifest injustice" grounds of relief.  Plaintiff's motion is not a mere disagreement with the Court's initial decision, but a good faith effort to present evidence to the Court that was either not previously available or overlooked at the time of the March 2016 Opinion.

**A. DETERMINATION OF WHETHER CASE IS EXCEPTIONAL**

Section 285 of the Patent Act authorizes district courts to award attorneys' fees to prevailing parties in "exceptional cases." 35 U.S.C. § 285.  As the Supreme Court has explained, an "exceptional" case is "one that stands out from others with respect to the (1) substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or (2) the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014). "District courts may determine whether a case is exceptional in the case-by-case exercise of their discretion, considering the totality of the

circumstances." Id. at 1751.  The court may consider
"frivolousness, motivation, objective unreasonableness (both in
the factual and legal components of the case) and the need in
particular circumstances to advance considerations of
compensation and deterrence." Id. at 1756 n. 6.  In conducting
its discretionary inquiry, the court makes its findings by a
preponderance of the evidence. Id. at 1758.  Generally, "where a
party has set forth some good faith argument in favor of its
position, it will generally not be found to have advanced
'exceptionally meritless' claims." Deckers Outdoor Corp. v.
Romeo & Juliette, Inc., No. 15-2812, 2016 WL 5842187, at *3
(C.D. Cal. Oct. 5, 2016) (citations omitted).  Fees are awarded
"not as a penalty for failure to win a patent infringement suit,
but as appropriate only in extraordinary circumstances." Octane
Fitness, 134 S. Ct. at 1753 (internal quotation marks and
citation omitted); see also SFA Systems, LLC v. Newegg Inc.,
793. F.3d 1344 (Fed. Cir. 2015) (explaining that the focus is
the substantive strength of the party's litigating position, and
not the "correctness" or "eventual success" of that position);
Western Falcon, Inc. v. Moore Rod & Pipe, LLC, No. 13-2963, 2015
WL 3823629, at *6 (S.D. Tex. June 18, 2015) ("[m]erely asserting
that a party's arguments were without merit does not show that a
case is exceptional").

### 1. Substantive Strength of Plaintiff's Litigation Position

First, the Court overlooked the substantive strength of Plaintiff's litigation position because of the uncertainty of the state of the law regarding 35 U.S.C. § 101.  The basis of Defendant's initial challenge to the substantive strength of Plaintiff's position was that "any reasonable attorney would have appreciated that the claims of the '618 patent would not survive a challenge under 35 U.S.C. § 101." Garfum, 2016 WL 1242762 at *4.  The Court, in its March 2016 Opinion, found that at step one of the Alice test, the claims of the '618 Patent were directed to an abstract idea, specifically the abstract idea of ranking content by popularity and within a category. Id. However, the Court then found that the claims of the '618 Patent "do not appear to contain" an inventive concept under step two of the Alice analysis because the "practice of ranking things in categories based on popular vote was well known before the advent of the internet, or even computers, and the requirement to involve an online database does not make the claim inventive." Id. at *6.  As a result, the Court stated "[t]hat the claims do not appear to have an inventive concept should have been obvious to the Plaintiff in the post-Alice environment." Id.  Moreover, it added that "although the law on patent eligible subject matter had been in flux, a sufficient number of cases had been decided by the time of briefing that

Plaintiff should have realized that its arguments under 35 U.S.C. § 101 were untenable." Id. at 8.

Plaintiff argues that the PTO's allowance of nearly identical claims in this '615 application belies the Court's determination it "should have been obvious" to Plaintiff that there was no inventive concept in the '618 patent.  The Court agrees.  As Plaintiff explains, "[g]iven the USPTO's repeated allowance of nearly identical claims in the '615 Application, Plaintiff believed the strength of its § 101 arguments to be more than sufficient, and put those same arguments in its Response to Defendant's Motion to Dismiss." (Am. Hansley Decl. ¶ 11.)  The March 2016 Opinion stated:

> The notice from the PTO also cannot provide cover to Plaintiff's positions taken in litigation. The notice of allowance was transmitted on June 19, 2015 (See Office Action at cover).  This was well after the commencement of litigation and the briefing of the original motion to dismiss. While it may be evidence that reasonable minds could differ, without any mention of 35 U.S.C. § 101 in the notice of allowance, this Court cannot draw such a conclusion.

2016 WL 1242762 at *9.

Defendant argues that "[a]t no point anywhere in the history of the '615 application did the [PTO] examiner discuss this briefing, Section 101, or the Alice standard." (Opp'n at 7.)  While the examiner may not have discussed § 101 explicitly in any Notice of Allowance, Plaintiff has put forth sufficient evidence demonstrating that it provided all of its § 101

briefings filed in this case to the PTO, and that a month after
the PTO received the briefing, on March 18, 2016, the examiner
issued the Third Notice of Allowance for the '615 patent (Am.
Hansley Decl. ¶¶ 7-9).  Plaintiff cites Sciele Pharma Inc. v.
Lupin Ltd., 684 F.3d 1253, 1258 (Fed Cir. 2012) for the
proposition that prior references were previously before the
PTO, a defendant faces an "added burden of overcoming the
deference that is due to a qualified government agency presumed
to have done its job."  Defendant argues that Lupin does not
apply because the Federal Circuit "expressly rejected" that
principle later in that same opinion. (Def. Br. at 11).
However, in Lupin, the Federal Circuit confirmed that there is a
"high burden of proof created by the necessary deference to the
PTO;" while it is not necessarily an "added" burden – it is
simply "reflected in the clear and convincing evidence burden
for proving invalidity." Lupin, 684 F.3d at 1260.  Defendant
also attempts to distinguish Lupin since it did not discuss §
101, and under CyberSource Corp. v. Retail Decisions, Inc., 654
F.3d 1366, 1369 (Fed. Cir. 2011) eligibility under § 101 is a
question of law where the PTO is entitled to no deference.
However, while the courts are "the final arbiter of patent
validity" and are not bound by the PTO's decision to issue a
patent, they may also "take cognizance of, and benefit from, the
proceedings before the patent examiner." Evonik Degussa GmbH v.

Materia Inc., No. 09-636, 2016 WL 337378, at *6 (D. Del. Jan. 26, 2016) (quoting Quad Envtl. Technologies Corp. v. Union Sanitary Dist., 946 F.2d 870, 876 (Fed. Cir. 1991)); see also Hyatt v. Kappos, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc) (recognizing the deference owed to the PTO as "the knowledge agency charged with assessing patentability"). Thus, Plaintiff's litigating positions, while certainly imperfect, were not lacking such substantive strength to justify shifting fees under § 285.

Plaintiff has submitted several persuasive intervening cases that support its motion for reconsideration, explaining that courts should hesitate to grant fees in § 101 cases. [Docket Items 64-65.] In YYZ, LLC v. Pegasystems, Inc., No. 13-581, 2016 WL 1761955, at *1 (D. Del. May 2, 2016), the court held that "the § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, e.g., shifting fees pursuant to 35 U.S.C. § 285." See also Papst Licensing Gmbh & Co. KG v. Xilinx Inc., No. 16-925, 2016 WL 4398376, at *2-*4 (N.D. Cal. Aug. 18, 2016) (denying attorney's fees under § 285 to the accused infringer who obtained a judgment on the pleadings that the asserted claims were invalid under § 101, noting that "[b]ecause this is a complex and developing area of the law," although Plaintiff's arguments were unpersuasive, its position was "not so baseless as to make this

case exceptional"); Device Enhancement LLC. v. Amazon.com., Inc., No. 15-762, 2016 WL 2899246, at *7 (D. Del. May 17, 2016) (noting that "[g]iven the evolving state of the law, the § 101 analysis should be, and is, a difficult exercise"); Clarilogic, Inc. v. FormFree Holdings Corp., No. 15-41 (S.D. Cal. Apr. 27, 2016)(ECF No. 74)(declining to find that "the substantive weakness of Defendant's position was so objectively apparent as to render the case exceptional" under § 285 because "post-Alice, the landscape of patent ineligibility under 25 U.S.C. § 101 is unsettled and rapidly evolving"); Credit Card Fraud Control Corp. v. Maxmind, Inc., No. 14-3262, 2016 WL 3355163 at *2 (N.D. Tex. Apr. 7, 2016) ("The substantive law of Section 101 patent-eligibility has evolved since Plaintiff initiated this lawsuit . . . [t]he mere fact that Plaintiff had a losing litigation position is not an automatic indicator that the case is exceptional under Section 285."); EON Corp. IP Holdings, LLC v. FLO TV Inc., No. 10-812, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) (denying attorney fees, noting patentee's position "turned on a complex and evolving area of [§ 101] law" and "the [court's] decision was not an easy one").

Additionally, while the Court examined DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245 (Fed Cir. 2014) in its initial Opinion, the Federal Circuit has opined in three additional instances on § 101 since briefing was completed in this case,

furthering the uncertainty in this area of jurisprudence. First, in Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016), the Court found a patent to a particular improvement to a database system patent-eligible because the claims were not directed to an abstract idea under step one of Alice; rather, they were "directed to a specific improvement to the way computers operate." Id. at 1336.  Then, in BASCOM Global Internet Services v. AT&T Mobility LLC, 827 F.3d 1341 (Fed. Cir. 2016), the Court held that the Plaintiff had properly alleged than "an inventive concept can be found in the ordered combination of claim limitations that transform the abstract idea of filtering content into a particular, practical application of that abstract idea." Id. at 2352.  The Court further explained that the "inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art . . . an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  The claims of the patent in that case generally recited a system for filtering Internet content, and the Court found that the specific method of filtering Internet content "cannot be said, as a matter of law, to have been conventional or generic" since the claims "may be read to 'improve[] an existing technological process.'" Id. at 1345, 1350-51.  Importantly, the Court reasoned that "[f]iltering

content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content." Id. at 1350. Furthermore, "[b]y taking a prior art filter solution (one-size-fits-all filter at the ISP server) and making it more dynamic and efficient (providing individualized filtering at the ISP serve), the claimed invention represents a 'software-based invention[] that improve[s] the performance of the computer system itself.'" Id. a 1351. Finally, in McRO, Inc. v. Bandai Namco Games America Inc., 837 F.3d 1299 (Fed Cir. 2016), the Court found that the patent claim at issue was not directed to an abstract idea, and did not merely invoke generic processes and machinery, therefore favoring patentability.

Mankes v. Vivid Seats Ltd., 822 F.3d 1302, 1312 (Fed. Cir. 2016) is also instructive. Plaintiff sued Defendant, alleging that their operation of Internet-based reservation systems, in conjunction with the operation of local reservation systems by movie theaters and other entertainment venues, infringed his patent. Id. at 1303. Plaintiff's case had depended on establishing "divided infringement," because it was "undisputed that no one person perform all of the steps of the method claims." Id. When Plaintiff had initially filed his complaints, "the law relating the divided infringement was in the midst of a multi-year process of active judicial reconsideration." Id. In

affirming the denial of fees for Defendant under § 285, the
Court explained that the district court "could readily view
[Plaintiff] as having reasonably, openly, and in good faith
pressed arguments for plausibly result-altering changes in
governing legal standards that were demonstrably under active
judicial reconsideration in this Court and the Supreme Court at
the time.  While [Plaintiff's] case was pending before the
district court, the law on divided infringement remained
uncertain, with both our court and the Supreme Court weighing in
on possible changes, and [Plaintiff's] litigation conduct
appropriately reflected that shifting legal landscape."
Similarly, here, while this Court had stated that it should have
been obvious to Plaintiff that it did not have a § 101 case in a
post-<u>Alice</u> environment, the law has since sufficiently evolved
so that Plaintiff may have had an arguable or plausible
inventive concept under § 101.  That, combined with the PTO's
approval of the '615 application after considering this case's
§ 101 materials, leads the Court to reconsider its granting of
fees to Defendant under § 285.

### 2. Unreasonable Manner in Which the Case was Litigated

Plaintiff asserts that its litigation conduct was not
unreasonable because "[i]n light of the low potential for
damages in this case and Plaintiff's strong belief in the
validity of the patent-in-suit, Plaintiff considered the offer

of a dismissal of its infringement claims with prejudice to be entire reasonable." (Pl.'s Br. at 17-18).  The Court finds that Plaintiff's litigation tactics were not so unreasonable to justify fees under the totality of the circumstances.

In its March 2016 Opinion, the Court found Plaintiff's conduct unreasonable because "this case was not litigated [by Plaintiff] in a manner showing confidence in a strong litigation position" as "the fact that the covenant not to sue was tendered almost immediately after the Court set the motion hearing makes it appear as though Plaintiff was running away from any decision on the merits." Garfum, 2016 WL 1242762 at *7-*8.  The Court added that "[f]or Plaintiff to claim that it had no other option but to provide a covenant not to sue to avoid the attendant consequences of bringing a lawsuit is at odds with the facts that Plaintiff is the one who filed the lawsuit. Id. at *8.  The Court agreed with Defendant that "Plaintiff's suit was dismissed to avoid a decision on the merits, but Plaintiff continued to litigate even when it realized it had an incredibly weak litigation position." Id. at *9.

After a thorough review and upon further reflection, the Court concludes that Plaintiff's conduct in this case was not unreasonable - this is not one of the rare patent cases in which attorneys' fees are warranted by the manner of litigation. Defendant argues that Plaintiff counsel's discovery about

covenant-not-to-sue caselaw does not make its conduct reasonable
because Plaintiff waited forty days later to dismiss its claims.
(Def. Br. at 8.)  But Plaintiff explains that its counsel "had
been working on the covenant not to sue with the intention of
filing its motion to dismiss before the Court ordered the
hearing on Defendant's Motion to Dismiss," and that the Court's
setting the hearing "merely spurred plaintiff to expedite what
it had already been working on." (Pl.'s Br. at 18-19.)
Plaintiff further explains that it "dismissed its claims and
provided the covenant not to sue, in essence, as a Hobson's
choice since there was no possibility of obtaining damages even
if it was meritorious in this case." (Id. at 19.)  While a
forty-day gap between learning about the law and handing the
covenant not to sue is not ideal, it is not such an excessive
delay to find the litigation conduct unreasonable. See, e.g.,
Bovino v. Amazon.com, Inc., No. 13-2111, 2016 WL 943780, at *3
(D. Colo. Mar. 14, 2016) (noting that although Plaintiff's
claims in the case were "sloppily drafted, overzealously
pursued, and ultimately unpersuasive," the Court could not say
that they were "so frivolous, objectively unreasonable, or
otherwise 'exceptional' as to warrant an award of fees" in
Defendant's favor).

        Defendant points to the fact that Plaintiff's arguments
were contrary to the text of the patent, and that Plaintiff

submitted a conclusory and irrelevant expert declaration, but under the totality of the circumstances analysis, the Court is not convinced that this case is "exceptional" under § 285. Plaintiff's conduct was not objectively unreasonable, as it put forth good faith arguments in favor of its positions.

Pragmatus Telecom LLC v. Newegg Inc., No. 12-1533, 2016 WL 675529 (D. Del. Feb. 18, 2016) is an instructive case. There, Plaintiff sued Defendant in federal district court in California, alleging that Defendant's use of live chat technology on its website infringed several of Plaintiff's patents. Id. at *1. The case was transferred to the District of Delaware, and after suppliers of the technology used by Defendant subsequently filed declaratory judgment actions against Plaintiff and reached settlements, Defendant filed an unopposed motion to dismiss their action. Id. Defendant moved for fees under § 285, among other reasons, Plaintiff's "initial opposition to [Defendant's] motion to transfer the case to this district, followed by its later stipulation to the transfer, demonstrate [Plaintiff's] intent to delay the case and force Newegg to incur considerable litigation expense. Id. at *2. The Court, in declining to assess fees, "decline[d] to ascribe an improper motive" from Plaintiff's decision to change its mind regarding transfer of venue, and noted that "[p]arties often change their minds with regard to strategic maneuvering

20

throughout litigation." Id. at *3. Similarly, here, while
Defendants may question Plaintiff's motives in delaying to
provide a covenant not to sue, the conduct does not rise of
unreasonable litigation conduct. See Blue Spike, LLC v. Adobe
Sys., Inc., No. 14-1647, 2015 WL 5542995, at *3 (N.D. Cal. Sept.
18, 2015) ("[w]hile Plaintiff's conduct was less than ideal
throughout the litigation, and in particular, as it drew to a
close, the Court is not convinced that . . . counsel acted with
'subjective bad faith.'").

Additionally, decisions granting fees after Octane Fitness
have generally concerned egregious litigation conduct that does
not appear in the current matter.  For example, in Raniere v.
Microsoft Corp., No. 15-540, 2016 WL 4626584, at *5 (N.D. Tex.
Sept. 2, 2016), the Court awarded fees to Defendant given
Plaintiff's "pattern of obfuscation and bad faith" throughout
the litigation, "culminating in his untruthful testimony at the
hearing on the motion to dismiss."  Similarly, in Alzheimer's
Inst. of Am., Inc., v. Avid Radiopharmaceuticals, No. 10-6908,
2015 WL 1422337, at *3 (E.D. Pa. Mar. 20, 2015), the court
assessed fees on plaintiff because plaintiff asserted that it
was the rightful owner of the patent and brought an infringement
action even though "it knew, when it brought [the] action, that
it was not the legal owner of the patent."  The court
characterized the conduct there as "rare" and "beyond common

decency," while asserting that "[b]ringing this action was more than a perpetuation of the conspiracy." Id.

Finally, there is no need to award attorneys' fees in the interest of deterrence, compensation, or any other purpose associated with the "inherently flexible" text of § 285. Octane Fitness, 134 S. Ct. at 1756. In finding this case to be exceptional, this Court had stated that "[w]hile not presenting 'indicia of extortion,' the present case presents the type of conduct of serial filings on a non-defensible patent that should be deterred." Garfum, 2016 WL 1242762, at *9. Upon further reflection, the Court believes that it overlooked how egregious the conduct needs to be to award fees under § 285, even after Octane Fitness.

In particular, courts should encourage litigants to voluntarily dismiss actions when appropriate, instead of assessing additional fees on top. See Visto Corp. v. Sproqit Technologies, Inc., No. 04-0651, 2007 WL 160942, at *2 (N.D. Cal Jan. 17, 2007) ("If fees are too readily awarded under § 285 when a patentholder extends a covenant not to sue resulting in dismissal of the case, then such covenants and the beneficial economies and finality attendant thereto might be unduly discouraged."); see also Vocaltag Ltd. v. B.V., No. 13-612, 2016 WL 5395878, at *2 (Sept. 27, 2016)("Because the purpose of § 285 is to compensate parties forced to defend against unreasonable

litigation and to deter improper conduct, a good way to think of the question is this: was the losing party's case so unusually weak on the merits that it suggests an improper purpose or demonstrates irresponsible conduct that should be deterred? Or, is there other evidence, besides substantive weakness on the merits, that suggests an improper purpose?"). Courts in non-patent cases have refused to award fees after a party voluntarily dismisses a case as well. See de Rothschild v. Rothschild, No. 12-3884, 2013 WL 12125761, at *9 (C.D. Cal. Aug. 8, 2013)(declining to find plaintiff's conduct to be exceptional in a trademark matter and noting that "plaintiffs should be encouraged voluntarily to dismiss cases, not punished"); Johnson v. Bemis Co., Inc., No. 11-563, 2012 WL 3562025, at *1 (E.D. Wis. Aug. 17, 2012) (refusing to require Plaintiff to pay attorney's fees after voluntary dismissing her ERISA action, noting that "[t]his is the kind of thing that courts seek to encourage" because "[a]warding fees after a voluntary dismissal (with prejudice) would reduce any incentive for dismissals and would instead encourage litigants to prolong matters and increase costs").

As a result, under the totality of the circumstances, Plaintiff's case was not "exceptional" under § 285.  In light of the unsettled legal landscape regarding patentability under § 101 after Alice, coupled with the PTO's allowance of nearly

identical claims, "[t]his is one of the rare instances where reconsideration is appropriate." In Re Lord Abbett Mut. Funds Fee Litig., 417 F. Supp. 2d 624, 630 (D.N.J. 2005).  The Order entered on March 30, 2016 will be vacated and modified in accordance with this decision.

## V.    Conclusion

An accompanying Order will be entered.


**December 16, 2016**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge